750 A.2d 107 (2000)
330 N.J. Super. 424
STATE of New Jersey, Plaintiff-Respondent,
v.
Patrick PANTUSCO, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1999.
Decided April 24, 2000.
*109 Anthony J. Cariddi, Hackensack, for defendant-appellant (Cariddi & Garcia, attorneys; Carol J. Garcia, on the brief).
John J. Scaliti, Assistant Bergen County Prosecutor, for plaintiff-respondent (William H. Schmidt, Bergen County Prosecutor, attorney; Mr. Scaliti, of counsel and on the brief).
Before Judges STERN, WEFING and STEINBERG.
*108 The opinion of the court was delivered by STERN, P.J.A.D.
This appeal concerns facts best left for a law school hypothetical. It involves the death of an innocent motorist killed in an automobile crash with defendant while he was fleeing from the police. The critical and interesting issues before us, together with numerous other claims also raised, deal with whether the chase was sufficiently related to felonious conduct so as to sustain defendant's conviction for felony murder. We conclude that there was enough evidence before the jury to sustain both defendant's convictions for robbery and for felony murder because the death occurred during the "immediate" flight from one of those robberies. We further conclude that, while a charge on the crime of manslaughter by eluding, N.J.S.A. 2C:11-4b(3), should have been given as a lesser included offense to felony murder and aggravated manslaughter if requested, the absence of such a request precludes reversal of the surviving felony murder conviction. We also merge some of the convictions and reject defendant's other claims without prejudice to a petition for post-conviction relief.

I.
Defendant was indicted for felony murder, N.J.S.A. 2C:11-3a(3) (count one), aggravated manslaughter, N.J.S.A. 2C:11-4a (count two), resisting arrest, N.J.S.A. 2C:29-2 (count three), eluding a police officer, N.J.S.A. 2C:29-2b (count seven), seven counts of aggravated assault, N.J.S.A. 2C:12-1b (counts four, five, six, eight, nine and eleven), three counts of robbery, N.J.S.A. 2C:15-1 (counts ten, twelve and thirteen), burglary and theft of an automobile, N.J.S.A. 2C:18-2 and 2C:20-3 (counts fourteen and fifteen), and theft of a credit card, N.J.S.A. 2C:21-6c (count sixteen). Defendant was convicted on all charges except counts eight and nine.[1] The judge merged counts seven (eluding in a manner creating the risk of death), ten and eleven (robbery and aggravated assault of Gloria Miskerik) into count one (the felony murder conviction), and also merged the conviction on count three for resisting arrest into the conviction for aggravated assault on Police Officer Skinner (count four). Defendant was sentenced to fifty years in the custody of the Commissioner of Corrections, with thirty years to be served before parole eligibility on the felony murder and to concurrent sentences on the other convictions.
Defendant raises numerous arguments on this appeal. The contentions are listed in their entirety in appendix A. However, we find that only the following discussion is necessary with respect to the issues raised. R. 2:11-3(e)(2). With respect to others, suffice it to say that our rejection of some of the following arguments concerning the trial proceedings can also be related to the contentions concerning the *110 grand jury and indictment, and that we find no basis on which to dismiss the indictment or any count even assuming a timely challenge thereto. R. 3:10-2(c). See, e.g., State v. Hogan, 144 N.J. 216, 235-39, 676 A.2d 533 (1996); State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 18-19, 472 A.2d 1050 (1984); State v. Ball, 268 N.J.Super. 72, 119-20, 632 A.2d 1222 (App. Div.1993), aff'd, 141 N.J. 142, 661 A.2d 251 (1995); State v. Holsten, 223 N.J.Super. 578, 583-85, 539 A.2d 325 (App.Div.1988).

II.
Defendant contends that there was insufficient evidence that he committed robberies, as opposed to thefts from the person. He further contends that, even if there was sufficient proof to sustain a robbery conviction, the proofs were insufficient to relate any robbery to the subsequent police chase, so as to provide the necessary nexus between the felony of robbery and the victim's death. Stated differently, defendant indicates that there was insufficient proof that the automobile crash occurred during the immediate flight from a robbery. However, there is no dispute that felony murder "is committed when the actor ... is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery..., and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants...." N.J.S.A. 2C:11-3a(3) (emphasis added). Independently, a robbery occurs if "in the course of committing a theft," the actor "inflicts bodily injury" (or threatens or puts the victim in fear of such injury) or "uses force upon another," and if such force or injury occurs during the "immediate flight after the attempt or commission" of the theft, that itself constitutes a robbery. N.J.S.A. 2C:15-1a. See also State v. Mirault, 92 N.J. 492, 497-501, 457 A.2d 455 (1983) (upholding robbery conviction where the injury was to a third-party arresting police officer). The parties focus on whether there was sufficient proof that the thefts involved force or injury sufficient to sustain a conviction for robbery and, if so, whether the police chase and the ultimate death of the victim were sufficiently related to a robbery for purposes of the felony murder statute. N.J.S.A. 2C:11-3a(3).
This appeal involves the breaking into and theft of a car followed by three separate thefts/robberies by a perpetrator in that car, and the ensuing pursuit of defendant that resulted in the death of a third-party. At approximately 10:30 a.m. on June 18, 1996, Charles McHarris dropped off his 1991 Ford Explorer for servicing at Joe and Joe's Service Station in Riverdale. McHarris parked the car on the side of the lot, left the keys in the car, and informed the service station attendant, Sam Gonzalez, of its presence. Gonzalez responded that it was "fine." At around 2:15 p.m. Gonzalez left the station for lunch, at which time he noticed that McHarris' vehicle was still on the lot. However, when Gonzalez returned to the station at about 2:45 p.m. McHarris' car was missing. When Gonzalez could not reach McHarris to ask him about the car, he feared that the car had been stolen, and called the Riverdale Police Department.
The police arrived at the service station at around 3:00 p.m. to fill out a report, and were also able to contact Mrs. McHarris, who told the police that she would get in contact with her husband. In responding to a page from his wife, McHarris called the Riverdale Police, at which time he was informed that his vehicle was missing. McHarris then went to the police station to speak to a detective about his vehicle. While at the police station, McHarris heard his name announced over the State Police Emergency Network ("SPEN") radio, indicating that he was involved in a purse snatching in Clifton. McHarris, of course, immediately reported that he was not involved in any purse snatching since, as they could see, he was in the police station.
*111 The first purse snatching occurred after 4:00 in the afternoon of June 18. Vera Rattansingh got off work at that time and drove to the Bradlees store in Clifton. As she was walking toward the store, a vehicle described as a black Ford Explorer pulled beside her and the driver asked her for directions to Main Street in Nutley. Rattansingh responded that she was not sure, but she would look on a map for him as long as he would move his car so that he would not block traffic. While Rattansingh looked for the street on a map, she realized that the man in the vehicle was attempting to take the purse off her shoulder. According to Rattansingh, "he pulled with so much force that he got the bag off my shoulder and I fell to the ground." The car ran over Rattansingh's left instep of her foot, and her arm and buttocks were bruised.
Shortly thereafter, the Clifton Police Department received a telephone call from an unidentified person who gave the license plate number of the vehicle involved. The number was then entered into the National Crime Information Center computer as a vehicle involved in a robbery. The following day, Rattansingh was called to police headquarters to view a photo line-up. She identified defendant.
Shortly after the theft of Rattansingh's purse, at around 5:00 p.m. on June 18, Diane Dorry walked in the parking lot of the Paramus Park Mall. As Dorry was walking from her vehicle to the mall she heard a man say "excuse me." She turned around and a man in a black Explorer asked her for directions to the Garden State Parkway. Dorry walked up to the car window and began giving him directions when he grabbed the handle of her purse and accelerated the vehicle. She let go of the purse in fear that she might be dragged by the moving car. She described that force was used because of the "pull on [her] shoulder ... at the time he was accelerating the gas." Dorry was not injured. Dorry then ran through the parking lot yelling for "help" and "police." Dorry eventually found the mall police, but was unable to find or identify the car. She went to the Paramus Police Department around 10:00 p.m. to give a statement of what had occurred. Dorry also identified a photo of defendant as the man in the car who stole her purse.
The third incident also occurred on the same day, while seventy-four year old Gloria Miskerik was shopping with her friend at Lord & Taylor's in the Fashion Center Mall, also in Paramus. The women finished shopping at around 5:00 p.m., when they began walking back to their car. A car, described by Miskerik as a dark van, approached the women and stopped to ask for directions to the Garden State Parkway. While the two women were conversing about who was to give him directions, the man reached out of the car window, grabbed Miskerik's purse and "floored" the vehicle. Miskerik did not let go of the purse. She ran with the accelerating car until eventually she fell to the ground and was forced to let go of her purse. Miskerik was seriously injured by the moving car, leaving her with severe cuts to her head and shoulder, and a blood clot in her left hip.[2] The police eventually spoke to Miskerik in the hospital where she and her friend identified defendant from a photograph.[3]
While defendant was stealing Miskerik's purse, an off-duty police officer, Albert Maas, was parking his car. He witnessed the entire event. Maas immediately directed another shopper to call 9-1-1 while he attended to the injured Miskerik. He then spoke to Paramus Police on the phone to give the dispatcher additional information regarding what he characterized as a "robbery." Eventually an ambulance and the police arrived, at which point Maas described the event again, although *112 he was unable to provide the police with a license plate number.
At 5:36 p.m., Patrolman Richard Skinner of the Washington Township Police Department heard over the SPEN radio a broadcast from the Paramus Police Department that "a second purse snatching with injuries" had just occurred, and the broadcast described the vehicle used in the incidents as a black Ford Explorer. Officer Skinner also indicated that the license plate number was broadcast and stuck in his head because of the unusual beginning, "A-A-A." At this point he recalled the earlier Clifton alarm that also identified a black Ford Explorer involved in a purse snatching and containing a license plate number beginning with "A-A-A." Skinner testified that he "recognized the vehicle just because the A-A-A stood out in my mind and also that it was a black Ford Explorer. I myself drove a black Ford Explorer so it kind of stuck in my head."
Officer Skinner was then instructed by his tour commander, Patrolman John Ryan Smith, to "check Linwood Avenue to see if, you know, the vehicle might come off the highway out of Paramus and that he would go to East Glen Avenue." As Skinner approached Linwood Avenue he observed a black Ford Explorer with license plates matching the SPEN dispatch stopped at a traffic light. Skinner knew "that the vehicle might contain the perpetrator who the police were looking for in purse snatches." As Skinner approached the car, he was able to identify the driver of the vehicle as matching the broadcast description of the man involved in the purse snatchings.
At this point, Officer Skinner verified the license plate on his mobile computer terminal and turned his vehicle around to follow defendant. Thereupon defendant "passed the vehicles on the right side and then just shot through the stop sign." Skinner then activated his overhead lights and sirens, radioed headquarters to alert them that he found defendant, and continued to follow the vehicle south on Pascack Road.
At about 5:40 p.m., Mariana Hickson was also driving south on Pascack Road in Paramus when she heard police sirens and was then unexpectedly hit in the rear passenger side of her vehicle by what she described as a "dark colored large vehicle." Defendant continued "around" Hickson's vehicle, while she pulled over to inspect her car. Hickson observed two police cars speed after the fleeing defendant.
Since traffic was heavy at the intersection of Oradell Avenue, thereby preventing defendant from turning right, he pulled into a Texaco Gas Station. Officer Skinner followed. Defendant then attempted to exit the gas station through another exit, but Skinner blocked that exit with his vehicle. As Skinner began to exit his car, defendant "rammed" the right front fender of the patrol car, causing Officer Skinner to hit his head on the car door jamb. Defendant was then able to exit the gas station and started to head north on Pascack Road. Officer Skinner drew his weapon, ran toward the defendant's car, and ordered him to stop. Defendant nonetheless continued to head north on Pascack Road, Officer Skinner returned to his car and attempted to follow.
At this point, Officer Skinner lost sight of defendant, but he noticed a man on the side of the road yelling, "he went down that way, he went down that way," pointing down Bedford Court. Skinner radioed to headquarters the location where defendant was heading, and turned down Bedford Court where he noticed the black Ford Explorer parked next to the curb on Rutgers Place. As Skinner approached the vehicle, defendant took off again, and Skinner followed him back onto Pascack Road. At this point, Officer Skinner described that defendant "was driving fast and recklessly."
In the interim, Officer Smith had the traffic stopped at the intersection of Pascack Road and Oradell Avenue, so as to block defendant from continuing down *113 Pascack Road. However, defendant avoided Smith, and turned left down Oradell Avenue while Skinner followed close behind. At this point, other police vehicles joined the chase.
As defendant approached and continued through the intersection of Oradell Avenue and Kinderkamack Road, Officer Skinner was "losing ground," although his lights and sirens were on. He watched defendant "swerve back and forth" and drive on the wrong side of the street going "in the wrong lane of traffic." According to Skinner, "[u]p ahead I could see that there was some type of accident, it looked like the Ford Explorer impacted with something however, I couldn't tell what had happened or what it had hit." As he approached, Skinner saw a red Chevrolet Blazer pushed "up on the curb on the other side of a tree," and that defendant's vehicle had come to a stop. As Skinner was arriving, defendant exited the Ford Explorer and started running down the street. Skinner followed him on foot while other police cars arrived at the accident scene. Officer Albert Lepera of the Paramus Police Department joined Officer Skinner in the chase on foot. Meanwhile Lieutenant Richard Kuiters pulled his car in front of defendant to block his path, and Lepera was able to tackle defendant.
The medical examiner declared the driver of the red Blazer, Stephanie Carroll, dead at the scene. He attributed the cause of death to "multiple fractures and injuries" from the accident.
On cross-examination of Officer Skinner, the following was developed concerning the reasons Officer Skinner chased defendant:
Q: Now you're aware that at this time you're chasing him for three purse snatches, one of which is with injury although you don't know how great an injury, correct? In part that's why you're chasing him?
A: I'm chasing him for three robberies with an injury.
Q: Okay.
A: Purse snatchings is how they came over the radio.
Q: Right. They came over as purse snatches, correct?
A: That's correct.
Q: They didn't use the word robbery, did they?
A: They did not use the word robbery.
Q: These are fellow police officers who you assume are conversant with the legal term robbery?
A: I would say they are.
Q: But they didn't choose to use the term robbery? You never heard the term robbery, you heard purse snatches?
A: I heard purse snatching. I know that taking somebody'sdepriving somebody of their property with the use of force is a robbery.
....
Q: Other than the fact that you heard that there was an injury you did not know that there was force used in these three purse snatches, correct?
A: Other than the fact there was an injury, no.
Q: You didn't?
A: I didn't.
Q: And the injury, you had no idea how severe or how minimal it was, is that correct?
A: I didn't know the extent of the injury, correct.
Q: You also knew that the person driving that vehicle ahead of you and you were pursuing was driving a stolen motor vehicle?
A: I knew that, that's correct.
Q: So you had three purse snatches, one with injuries thatof a degree you don't know, a stolen five year old car, and you made the decision on Oradell Avenue when this man who had already had a gun pointed at him, who had repeatedly driven head-on into traffic, again went intohead-on into traffic, *114 you made the decision to continue the pursuit? Is that true?
A: Based on three purse snatchings, in your words, an injury, a stolen vehicle and the fact that he rammed my police car I felt that he was that dangerous and that I should follow him until he stops and exits the vehicle.
Q. Let me ask you a question, Officer; why did you think he was driving so fast and so recklessly if it wasn't to get away from you?
A. I never disputed the fact he was trying to get away from me.
Officer Lepera testified that he believed the radio transmission indicated that there were two strong arm robberies within about 15 minutes of each other in Paramus and "that Clifton has also had a strong arm robbery with a vehicle matching the same description." Lepera joined the pursuit when he saw the Ford Explorer and Skinner's police car pass through the intersection of Oradell and Forest Avenues.

III.
We are satisfied that the proofs warranted the three convictions of robbery, State v. Sein, 124 N.J. 209, 590 A.2d 665 (1991), and that there was no reversible error in the jury charge relating to the robberies of Rattansingh and Dorry and the first degree robbery of Miskerik. The purses of Dorry and Rattansingh were taken by defendant while driving a moving vehicle, thereby dragging or pulling the victims. With respect to Miskerik, defendant was convicted of second-degree aggravated assault during the incident, thus elevating the offense to a first-degree robbery. However, given the merger of the Miskerik robbery into the felony murder, the degree of robbery is insignificant. A robbery in the first or second degree can be a predicate felony for felony murder.
In his jury instructions, the judge charged that to convict for robbery, the State "must prove beyond a reasonable doubt that while in the course of committing [the] theft the defendant knowingly inflicted bodily injury or used force upon another or he purposely put ... that person in fear of immediate bodily injury." He repeated that "[i]n addition to proving beyond a reasonable doubt that the defendant was in the course of committing a theft, the State must also prove beyond a reasonable doubt that while in the course of committing that theft the defendant knowingly inflicted bodily injury or he used force upon another." See State v. Sewell, 127 N.J. 133, 148-49, 603 A.2d 21 (1992). He specified that force had to be applied to the victim herself, and must have been "greater than that necessary... merely to snatch the object from the victim's grasp or the victim's person." The judge mentioned that in a purse-snatching "there may be no force or there may be force," so a purse-snatching would not be a robbery if there were no bodily injury and "[i]f you find that the force that was used does not raise it to the level of robbery."
The court also defined "knowing" conduct and defined "bodily injury" and "serious bodily injury." The judge informed the jury that the incident involving Miskerik would be first-degree robbery if it found the requisite theft, and in addition found that "the robber purposely inflicted or attempt[ed] to inflict serious bodily injury." However, he also noted that if "there's no force and there's [sic] no injuries," then defendant would only be guilty of third-degree theft. The jury was instructed to consider theft from the person as lesser-included offenses to each robbery.
With respect to felony murder, the court explained that the prosecution had to prove beyond a reasonable doubt that defendant "was engaged in the immediate flight after committing the crime of robbery"; that defendant caused Carroll's death; and that defendant caused Carroll's death "at some time within the course of the commission of that crime including its aftermath of flight and concealment efforts." *115 The judge advised the jury that it had to find defendant guilty "of at least one of those counts of robbery" before it could consider him guilty of felony murder.
The jury was further instructed to consider several factors "in determining whether the defendant was in immediate flight from the robbery at the time of the commission of the acts which resulted in" Carroll's death:
First, the distance from the scene of the robbery that the death occurs, the time between the commission of the robbery and the death of [the victim], whether the police were in close pursuit of the defendant's vehicle, whether the defendant had reached a place of temporary safety prior to the acts which culminated in the death of [the victim]. You can consider whether the defendant was still in possession of the fruits of the crime committed.
The court also defined the term "immediate":
The term immediate is not a term that requires a precise tick of the clock or measured distance along the escape route. It's a term that can be taken to mean, quote, this is right from the law, "a reasonable time in view of the particular facts and the circumstances. No individual factor is necessarily controlling. It is the combination of several factors that must be considered."
The judge thereafter told the jury that the State also had to prove beyond a reasonable doubt that "the victim's death was a probabl[e] consequence of the flight after committing robbery" and that "to be a probable consequence of the robbery the death must not have been too remote or too accidental in its occurrence or dependent on another's volitional acts to have a just bearing on the defendant's liability or the gravity of the offense." The jury was told the State had to prove beyond a reasonable doubt "that under all the circumstances the death did not occur in such an unexpected or unusual manner that it would be unjust to find the defendant responsible for the death."
The court also illustrated felony murder with two contrasting examples:
On the one hand, and I'll mention it again, a bank robber would not be liable for felony murder if at the moment a bank robber stepped into the bank the employee pushing the button for a burglar alarm was electrocuted because of a short. On the other hand, it is in the robbery of a store for example, in which the store keeper fires at the robber but instead he kills an innocent bystander. The death would not be too remote for the defendant to be guilty of felony murder, that is the robber.
The jury was further instructed that "[t]he key issue is whether the death is foreseeable. It need not be probable." The court finished by noting that the prosecution contended that Carroll's death, "while committed recklessly, unintentionally and accidentally, was a foreseeable consequence of" the flight and therefore "was a probable consequence of the defendant's conduct," whereas defendant contended that the death was unforeseeable because "it was too dependent upon the volitional conduct of another, it was too remote and too accidental for a just verdict of" guilt.
We find no basis in the proofs or the jury instructions, taken as a whole, to reverse the felony murder conviction. As the police dispatch related to a report concerning one or more of what the jury found to be robberies, the police chase was sufficiently related to a robbery, and if the death of Stephanie Carroll occurred during the immediate flight from a robbery, the conviction for felony murder must be sustained.[4]
*116 Felony murder requires the actor to commit or attempt to commit robbery or another felony named in the statute, and to cause the death of any person, other than a "participant" in the felony, "in the course of such crime or of immediate flight therefrom." N.J.S.A. 2C:11-3a(3). It is a strict-liability crime in the sense that it does not require any intent for the homicide, but the State must still prove causation. State v. Martin, 119 N.J. 2, 20, 573 A.2d 1359 (1990). The underlying felony or the immediate flight from it must have been a but-for cause of the victim's death, and the death must have been a "probable consequence" of the actor's conduct during the felony or immediate flight. Ibid.; N.J.S.A. 2C:11-3a(3).
With respect to the "probable consequence" threshold, "a defendant should be exculpated [from liability for felony murder] only when a death occurs in a manner that is so unexpected or unusual that he or she could not justly be found culpable for the result." Martin, supra, 119 N.J. at 33, 573 A.2d 1359. In other words, death is the "probable consequence" of the defendant's conduct unless it "was `too remote, accidental in its occurrence, or too dependent on another's volitional act to have a just bearing on the defendant's culpability.'" Ibid. (citation omitted); N.J.S.A. 2C:2-3e.
Defendant argues that but-for causation did not exist because the pursuit did not immediately follow the robberies, and that the victim's death was not the "probable consequence" of his own conduct because it arose instead from police misconduct during the pursuit. The pursuit occurred for a period of between two minutes, forty-eight seconds, and five minutes, eighteen seconds, there being a dispute among the experts with respect to the time and speeds. Defendant contends that an improper chase in violation of the State Police Pursuit Guidelines could not have been foreseen as a likely consequence of his actions.[5] However, the issue of remoteness is fact sensitive. Cf. State v. Mauricio, 117 N.J. 402, 415, 568 A.2d 879 (1990) (whether the defendant had sufficient time to "cool down" between the provocation and the homicide for purposes of passion-provocation manslaughter was a jury question).
There were no proofs that defendant had found a refuge between the last robbery and the beginning of the pursuit, and whether defendant was attempting to elude the police while still fleeing from the robbery was an issue for the jury to decide. Moreover, the fact that one or more police officers may have deviated from the guidelines for a safe pursuit, or otherwise proceeded unsafely through heavy traffic, cannot excuse defendant's conduct or his statutory responsibility. That police may deviate from preferred practice is neither a remote possibility nor a basis on which the Legislature sought to avoid strict liability for causing the death of a non-participant during the flight from a robbery. See Canico v. Hurtado, 144 N.J. 361, 366, 676 A.2d 1083 (1996) (police officer immune from suit due to accident occurring during his negligent response to crime scene; "[t]he response to reports of crimes-in-progress, are fraught with danger and often require split-second judgments"); Tice v. Cramer, 133 N.J. 347, 351-52, 627 A.2d 1090 (1993) (officer immune for dangerous pursuit of suspect who *117 ran four stop signs before colliding with the plaintiff's decedent).[6]
Defendant drove through intersections, on the wrong side of the road, and used the road shoulder to pass cars to elude Officer Skinner. Whatever his reason, the resulting fatal accident cannot be deemed too remote, dependent on the police's conduct, or otherwise so unexpected or unusual that it would have been unjust to hold defendant responsible for Carroll's death. Martin, supra, 119 N.J. at 33, 573 A.2d 1359.
Defendant also contends that the proofs reflect that the pursuit did not "immediately" follow the robberies, as N.J.S.A. 2C:11-3a(3) requires. However, immediacy refers to "a reasonable time in view of the particular facts and circumstances of the case," State in re J.R., 234 N.J.Super. 388, 394, 560 A.2d 1279 (Ch. Div.1988), and felony murder is established "when the initial crime and the murder are closely connected in point of time, place, and causal connection and are integral parts of one continuous transaction," State v. Mirault, 92 N.J. 492, 500, 457 A.2d 455 (1983). Accord, State in re J.R., supra, 234 N.J.Super. at 388, 560 A.2d 1279 (the question is whether "[t]he [felony], flight and death in this case represent a continuous, indivisible transaction"; juvenile transferred to Law Division for felony murder prosecution where death occurred following chase from the scene of a burglary).
In Mirault, supra, 92 N.J. at 500-01, 457 A.2d 455, the Supreme Court, in relating the flight component of a robbery to the "analogous" concept of felony murder, made clear that "[t]he question in each felony murder case related to robbery is one of fact: whether the offender, before inflicting the injury that causes death, has reached a point of at least temporary safety... or become subject to `complete custody.'" See also State v. Spencer, 319 N.J.Super. 284, 308-09, 725 A.2d 106 (App. Div.1999) (noting that the predicate offense and the homicide must be "closely connected in point of time, place and causal connection [so as to constitute] integral parts of one continuous transaction," but that reaching point of "temporary safety" does not per se prevent a finding of the requisite nexus); State v. Smith, 210 N.J.Super. 43, 47-48, 509 A.2d 206 (App. Div.), certif. denied, 105 N.J. 582, 523 A.2d 210 (1986) (evidence sufficient to sustain felony murder on appropriate instructions where, after committing armed robbery, the defendant drove away, ran through the stop sign at the end of the street and hit another car, whose driver had a heart attack and later died).
In this case the chase took between about three to five minutes, and commenced approximately twenty or twenty-five minutes after the last robbery. There is no basis for finding as a matter of law that in spending less than twenty-five minutes in rush-hour traffic defendant "reached a point of at least temporary safety," Mirault, supra, 92 N.J. at 501, 457 A.2d 455, or otherwise severed the connection between the last robbery and the pursuit that began while defendant was still on the road. In short, this record did not preclude the jury from finding that the robbery and the flight resulting in Carroll's death were part of a "continuous transaction." Ibid.
However, the jury was not asked by special verdict to indicate from which robbery or robberies defendant was fleeing when the accident occurred, and the judge instructed the jury that if the death occurred during the flight of any one robbery, defendant could be convicted of felony murder. As a result, the judge should have merged all the robbery convictions into the felony murder as the record reflects no finding as to which constituted the underlying felony, and the jury may have concluded that it was all three. See *118 State v. Diaz, 144 N.J. 628, 643, 677 A.2d 1120 (1996); State v. Gibson, 318 N.J.Super. 1, 11-12, 722 A.2d 960 (App.Div.1999) (regarding the importance of special verdicts). See also State v. Harris, 141 N.J. 525, 562-63, 662 A.2d 333 (1995) (holding that "when there is sufficient evidence to support two or more alternative felony theories, a jury need not designate which felony theory it relies on to convict one of felony murder so long as there is sufficient evidence to sustain each felony," but no merger issue was discussed in opinion following imposition of death sentence). Cf. State v. Manning, 234 N.J.Super. 147, 164, 560 A.2d 693 (App.Div.), certif. denied, 117 N.J. 657, 569 A.2d 1351 (1989) (two convictions for felony murder could not survive where there was only one death; only one felony conviction was merged into surviving felony murder, but the two felony murder convictions reflected a finding that both robbery and escape were underlying felonies).
Moreover, the State properly concedes that the aggravated manslaughter conviction should have merged into the felony murder as there cannot be two homicide convictions for the death of one victim.[7]

IV.
Defendant contends that the trial court committed plain error in failing to charge manslaughter by eluding, N.J.S.A. 2C:11-4b(3), "as a lesser included crime" to felony murder. A court may charge the jury on a lesser-included offense when the facts provide "a rational basis for a verdict convicting the defendant of the included offense" instead of the offense charged in the indictment. N.J.S.A. 2C:1-8e. In order to charge a lesser-included offense, there must be a basis for finding the defendant not guilty of the greater offense, as well as guilty of the lesser offense. State v. Brent, 137 N.J. 107, 115-17, 123, 644 A.2d 583 (1994).
If the defendant does not request a charge on a lesser-included offense, "the trial court does not ... have the obligation on its own meticulously to sift through the entire record ... to see if some combination of facts and inferences might rationally sustain [the] charge" on the lesser offense. State v. Choice, 98 N.J. 295, 299, 486 A.2d 833 (1985). "It is only when the facts `clearly indicate' the appropriateness of that charge that the duty of the trial court arises." Ibid. See also State v. Brent, supra, 137 N.J. at 115-18, 644 A.2d 583; State v. Sloane, 111 N.J. 293, 303, 544 A.2d 826 (1988). Furthermore, the court's failure to give such a charge on its own is not error if the defendant might have had a strategic reason for declining to request instructions on a lesser-included offense, such as here where there was an evidentiary basis for the jury to acquit of felony murder and aggravated manslaughter and convict only of death by auto. See State v. Perry, 124 N.J. 128, 162, 590 A.2d 624 (1991)(finding that lack of sua sponte charge on self-defense is not plain error when the unrequested charge would be incompatible with the defense strategy); State v. Doss, 310 N.J.Super. 450, 455-56, 708 A.2d 1219 (App.Div.), certif. denied, 155 N.J. 589, 715 A.2d 992 (1998) (noting the absence of plain error where defense strategy is involved and the jury can choose another lesser offense rather than merely convict of the greater offense or acquittal).
In addition, at least where the lesser offense has an element not included in the greater, see N.J.S.A. 2C:1-8, the court cannot charge the lesser offense without defendant's consent, see State v. Dixon, 125 N.J. 223, 257, 593 A.2d 266 (1991); State v. Sloane, supra, 111 N.J. at 303, 544 A.2d 826. Compare State v. Purnell, *119 126 N.J. 518, 530-31, 601 A.2d 175 (1992), rev'd on other grounds, 161 N.J. 44, 735 A.2d 513 (1999) (felony murder must be charged as lesser offense in capital prosecution even though it was an additional element of underlying felony); State v. Harvey, 151 N.J. 117, 152-54, 699 A.2d 596 (1997) (same); State v. Jones, 308 N.J.Super. 174, 191-93, 705 A.2d 805 (App. Div.), certif. denied, 156 N.J. 380, 718 A.2d 1209 (1998) (permitting unindicted felonies to be charged as basis for felony murder in capital case). Thus, for example, because of the additional element of culpability (reckless conduct), reckless manslaughter should not be charged as a lesser-included offense to felony murder. See State v. Crisantos, 102 N.J. 265, 271-72, 508 A.2d 167 (1986); State v. Pennington, 273 N.J.Super. 289, 298-99, 641 A.2d 1085 (App.Div.), certif. denied, 137 N.J. 313, 645 A.2d 141 (1994).
Felony murder and manslaughter while eluding are both strict liability crimes. As already noted, felony murder "is committed when the actor ... is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery [or another named felony], and in the course of such crime or of immediate flight therefrom, ... causes [a] death ...," N.J.S.A. 2C:11-3a(3), whereas manslaughter while eluding is committed when the actor causes a death "while fleeing or attempting to elude a law enforcement officer in violation of subsection b. of N.J.S. 2C:29-2," for which the actor "shall be strictly liable," N.J.S.A. 2C:11-4b(3). A violation of N.J.S.A. 2C:29-2b requires the actor to engage in flight after having received a signal from a police officer to stop.
Operating a vehicle and eluding are, of course, distinct elements that are not part of felony murder. However, the N.J.S.A. 2C:1-8d(1) definition of lesser-included offenses requires an analysis of whether the lesser offense is to "be established by proof of the same or less than all the `facts,' not `elements,' required to establish the commission of the offense charged." State v. Graham, 223 N.J.Super. 571, 576, 539 A.2d 322 (App.Div.1988); accord, Doss, supra, 310 N.J.Super. at 455, 708 A.2d 1219. See also Sloane, supra, 111 N.J. at 299, 544 A.2d 826 (requiring charge of lesser assault with additional element when requested by defendant); Dixon, supra, 125 N.J. at 255-56, 593 A.2d 266. Accordingly, where, as here, the fatal accident can be seen as occurring during a police chase as part of the flight from the predicate felony, manslaughter while eluding should be charged as a lesser-included offense to felony murder. State v. Bridges, 133 N.J. 447, 474, 628 A.2d 270 (1993) (O'Hern, J., concurring in part and dissenting in part) (describing N.J.S.A. 2C:11-4b(3) as a crime of "negligent homicide"); Cannel, New Jersey Criminal Code Annotated, comment 4.1 on N.J.S.A. 2C:11-4 (noting causation for manslaughter while eluding "is analogous to felony murder and so issues relating to causation will probably be handled in the same way.")[8] However, given the additional element of eluding and the possible defense strategy gleaned from the record (without any indication of defense strategy to the contrary, see State v. Preciose, 129 N.J. 451, 609 A.2d 1280 (1992)), we can find no plain error by virtue of the absence of such charge without a request.
*120 The questions concerning whether defendant would be convicted of one or more robberies, whether the police dispatch would be sufficiently related to a robbery, and whether the jury could find that the chase and accident were sufficiently related to a "flight" therefrom, raised a real question of whether defendant would be convicted of felony murder. In that context, the possibility of acquittal of felony murder was not remote[9] given the fact the judge charged death by auto as a lesser-included offense to aggravated manslaughter with defendant's consent, if not at his request,[10] and the jury could have returned a homicide conviction without finding defendant guilty of either felony murder (with thirty years to be served before parole eligibility) or aggravated manslaughter (with a range of ten to thirty years).[11] Moreover, the jury could have done so on the basis of a conviction for a lesser-included offense to manslaughter by eluding. See Cannel, supra, comment 4.1 to N.J.S.A. 2C:11-4 (death by auto is a lesser-included offense to manslaughter by eluding as well as felony murder and aggravated manslaughter).
In his summation, defense counsel submitted that "[t]here was a time lapse and defendant reached a place of temporary safety, whatever that place may have been... This is no felony murder. There was no immediate flight, he was too dependent upon the volitional conduct of another. And it was just unforeseeable, unforeseeable for the police and unforeseeable for Patrick." Counsel added "[i]t's not even aggravated manslaughter [in the absence of] an extreme indifference to the value of human life...." Finally, he stated "[i]f you find that [defendant] operated his vehicle recklessly and that he killed Stephanie Carroll you convict him of vehicular homicide." We find no basis for reversing the felony murder conviction because the trial judge did not charge manslaughter by eluding as a lesser-included offense. Similarly, and particularly because of the charge given on the lesser-included offense of death by auto with respect to the aggravated manslaughter, there would be no basis to upset that conviction which, as we have noted, merges into the felony murder.

V.
We reject defendant's arguments that his convictions for burglary and theft of an automobile (counts fourteen and fifteen) should merge. We have previously held that unauthorized entry into a motor vehicle for purposes of joyriding constitutes burglary. State v. Jijon, 264 N.J.Super. 405, 624 A.2d 1029 (App.Div.1993), aff'd o.b., 135 N.J. 471, 640 A.2d 1152 (1994). Therein we stated:
It is now well established that burglary is complete upon entry with purpose of committing an offense. See State v. Pyron, 202 N.J.Super. 502, 504, 495 A.2d 467 (App.Div.1985); Cannel, Criminal Code Annotated, Comment 2 to 2C:18-2 (1992-1993) at 353. The projected offense need not be actually committed. *121 See State v. Mangrella, 214 N.J.Super. 437, 441, 519 A.2d 926 (App. Div.1986), certif. den., 107 N.J. 127, 526 A.2d 194 (1987). The burglary and a subsequent attempted theft by unlawful taking are separate and distinct offenses "even though the `structure' broken into is also the `movable property' attempted to be stolen." State v. Subin, 222 N.J.Super. 227, 236, 536 A.2d 758 (App.Div.1988), certif. den., 111 N.J. 580, 546 A.2d 506 (1988). The notion that joyriding is not an "offense" within the meaning of N.J.S.A. 2C:18-2 is belied by the plain language of the statute which defines burglary as an entry (or surreptitious remaining) "with purpose to commit an offense therein", an all encompassing term which includes not only crimes, but disorderly persons offenses and even petty disorderly persons offenses. See N.J.S.A. 2C:1-14k; also Cannel, supra, Comment 3 to 2C:18-2 at 354-355.

[Id. at 407, 624 A.2d 1029.]
Shortly before Jijon was decided, Judge Steinberg, then sitting in the Law Division, rendered an opinion to the same effect that was published after the decision in Jijon. See State v. Martes, 266 N.J.Super. 117, 628 A.2d 817 (Law Div.1993). In support of his rationale that unauthorized entry into a motor vehicle for purposes of joyriding constituted burglary, Judge Steinberg stated:
Burglary and the underlying offenses such as theft have consistently been treated as separate and distinct offenses. Accordingly, it has been held that under appropriate circumstances consecutive sentences for burglary and third degree sexual contact are appropriate. State v. Mosch, 214 N.J.Super. 457, 519 A.2d 937 (App.Div.1986). In addition, it has been held that an acquittal on the charge of theft does not require a conviction of burglary to be set aside since burglary requires only an entry with a purpose to commit an offense irrespective of whether an offense is actually committed. State v. Mangrella, 214 N.J.Super. 437, 519 A.2d 926 (App.Div.1986). Burglary and robbery do not merge. The crime of burglary is complete upon entry into a structure unlawfully for the purpose of committing an offense once inside. State v. Pyron, 202 N.J.Super. 502, 495 A.2d 467 (App.Div.1985). If, in addition to the hostile entry, the intended offense is committed, then the offense itself is separately punishable. Id. at 504, 495 A.2d 467. The legislature considered and specifically rejected a recommendation that a person could not be convicted both for burglary and for the offense it was his purpose to commit after the entry. See Cannel, Title 2C, New Jersey Criminal Code Annotated, 1992-1993 edition, comments one and seven and State v. Pyron, supra, at 504, 495 A.2d 467.
[Martes, supra, 266 N.J.Super. at 121, 628 A.2d 817.]
The fact that the car was in fact taken and a theft was completed does not change the rationale that entry and theft are two separate offenses. While State v. Subin, 222 N.J.Super. 227, 236, 536 A.2d 758 (App. Div.), certif. denied, 111 N.J. 580, 546 A.2d 506 (1988), held that there was no merger of burglary and attempted theft of a car when the defendant intended only to take property from the vehicle rather than the car itself, it also made clear that burglary and the theft offense involved separate criminal activity. See Martes, supra, 266 N.J.Super. at 122-23, 628 A.2d 817. The issue before us is not whether consecutive sentences can be imposed for burglary and theft of the burglarized vehicle; that would involve a very different question than the one involved in this case. Here, concurrent sentences were imposed, and given the fact that merger (to the extent that it flows from double jeopardy considerations) turns on legislative intent with respect to multiple punishment imposed in the same prosecution, see State v. Dillihay, 127 N.J. 42, 601 A.2d 1149 (1992); State v. Gonzalez, 123 N.J. 462, *122 588 A.2d 816 (1991); State v. Graham, 245 N.J.Super. 257, 584 A.2d 878 (App.Div.), rev'd on other grounds, 126 N.J. 310, 598 A.2d 874 (1991); State v. Anaya, 238 N.J.Super. 31, 36-39, 568 A.2d 1208 (App. Div.1990) (outdated on the merger issue by Gonzalez, supra, and Dillihay, supra), the Legislature's silence and inaction for a decade following the decisions with respect to the non-merger of burglary and theft support our view that burglary and theft of the burglarized motor vehicle do not merge.

VI.
In sum, we affirm the felony murder conviction and sentence imposed thereon. We direct the merger of the aggravated manslaughter and all the robbery convictions therein. We otherwise affirm the judgment and concurrent sentences imposed for those crimes, and remand for a corrected judgment.

APPENDIX "A"
DEFENDANT'S LEGAL ARGUMENTS POINT I DISMISSAL OF INDICTMENT AS TO FELONY MURDER, ROBBERY AND AGGRAVATED MANSLAUGHTER IS MANDATED AND DOUBLE JE[O]P[A]RDY PRECLUDES RETRIAL WHERE GRAND JURY WAS UNAWARE OF N.J.S.A. 2C:11-4(b)(3) AND THE PROSECUTION DID NOT DISCLOSE TO THE GRAND JURY THAT THE DEFENDANT'S CULPABILITY OF COMMITTING THEFTS WAS CONSIDERED BY THE PROSECUTION TO ONLY RISE TO THE LEVEL OF MERE RECKLESSNESS AND THUS INSUFFICIENT AS A MATTER OF LAW TO CONSTITUTE ROB[B]ERY OR THAT THE SUBSEQUENT CHASE WAS INITIATED BY POLICE OFFICER COMING UPON THE DEFENDANT, WAITING HIS TURN IN TRAFFIC, AND REINITIATED
APPENDIX "A"Continued
THE CHASE TWICE, ONCE AFTER HAVING DRAWN A WEAPON ON THE DEFENDANT. [ARGUMENT IS RECO[GN]IZABLE ON APPEAL. R.[ ]3:10-2(d) ]
(A) THE PROSECUTION IS PRECLUDED FROM CHARGING THAT THE DEFENDANT "WITHIN THE COURSE OF ROBBERY OR IN ITS IMMEDIATE FLIGHT THEREFROM" CAUSED, FOR PURPOSES OF IMPOSING CRIMINAL CULPABILITY, THE DEATH OF THE DECEDENT, AS A MATTER OF LAW.
(B) THE OMISSION OF "IMMEDIATE" IN THE INDICTMENT AS TO FELONY MURDER IS NOT ONLY ESSENTIAL TO ESTABLISH THE STRICT LIABILITY CRIME OF FELONY MURDER BUT SERVES TO DISTINGUISH THE OFFENSE FROM THE UNCHARGED STRICT LIABILITY CRIME OF MANSLAUGHTER FOR A DEATH CAUSED BY FLEEING/ELUDING A POLICE OFFICER PURSUANT TO N.J.S.A.[]2C:11-4(b)(3) AND THEREFORE RENDERS THE INDICTMENT MANIFESTLY DEFICIENT AND PALPABLE.
(C) CONSCIOUS DESIGN OF THE INDICTMENT TO OVERRIDE THE PROSECUTION'S BURDEN TO PROVE ESSENTIAL ELEMENTS WAS CONTINUED BY THE FACT THAT DEFENDANT WAS INDICTED AND CONVICTED OF AGGRAVATED MANSLAUGHTER WHERE THE GRAND JURY WAS UNAWARE THAT THE WRITTEN LEGISLATIVE INTENT OF N.J.S.A.[]2C:11-4(b)(3) PRECLUDES THE ACT
*123 APPENDIX "A"Continued
OF FLEEING TO CONSTITUTE MANIFEST INDIFFERENCE OF LIFE[.]
POINT II VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE. THERE WAS A MANIFEST DENIAL OF JUSTICE. (RAISED BELOW R.[ ]2:10-1;[ ]3:20-1).
(A) THE PROSECUTION'S EVIDENCE DEMONSTRATED THAT THE DEFENDANT WAS NOT IN "IMMEDIATE FLIGHT" AN ESSENTIAL ELEMENT OF FELONY MURDER AND THEREFORE AS A MATTER OF LAW THE CONVICTION CAN NOT STAND. FURTHERMORE NO REASONABLE INFERENCE EXISTED BY WHICH ANY RATIONAL TRIER OF FACT COULD HAVE FOUND THAT THE DEFENDANT WAS MORE PROBABLE THAN NOT IN IMMEDIATE FLIGHT FROM THE ALLEGED ROBBERY(S).
(1) DOUBLE JEOPARDY HAS ATTACHED AND THE PROSECUTION IS NOT ONLY PRECLUDED FROM SEEKING CONVICTION OF FELONY MURDER BUT DEATH CAUSED BY ELUDING A POLICE OFFICER PURSUANT TO N.J.S.A.[ ]2C:11-4b(3)[.]
(B) THE ESSENTIAL ELEMENTS OF "KNOWING" INFLICTION OR "KNOWING" USE OF FORCE REQUIRED FOR 2 nd DEGREE ROBBERY AND "PURPOSELY" INFLICTS "SERIOUS BODILY INJURY" REQUIRED FOR 1 st DEGREE
APPENDIX "A"Continued
ROBBERY WAS NOT PROVEN BEYOND A REASONABLE DOUBT. PROSECUTION'S RIGHT TO REASONABLE INFERENCES FOR PURPOSES OF MOTION DOES NOT REDUCE ITS BURDEN OF PROVING ALL ESSENTIAL ELEMENTS OF THE CRIME OF FELONY MURDER.
(C) VERDICT OF GUILT AS TO AGGRAVATED MANSLAUGHTER WAS AGAINST THE WEIGHT OF THE EVIDENCE WHERE THE PURSUING POLICE OFFICER STATED THAT THE ACCIDENT WAS NOT FORESEEABLE AND THE TRIAL COURT DENIED THE MOTION BASED ON EVIDENCE NOT IN THE RECORD.
(D) VERDICT OF AGGRAVATED ASSAULT IS AGAINST THE WEIGHT OF THE EVIDENCE. THE PROSECUTION HAD NO PROOF AS TO PERMANENT INJURIES OR PROBAB[I]LITY OF DEATH.
(E) VERDICT OF BURGLARY AND ELUDING THE POLICE OFFICER IS AGAINST THE WEIGHT OF THE EVIDENCE.
POINT III DEFENDANT WAS DENIED OPPORTUNITY TO PRESENT DEFENSE TO FELONY MURDER AND AGGRAVATED MANSLAUGHTER. LOWER COURT'S FAILURE [TO GRANT] DISCOVERY OF INTERNAL PROSECUTOR'S REPORT AND FAILURE TO GRANT REQUEST FOR MISTRIAL CONSTITUTED A MANIFEST INJUSTICE. OBVIOUS FAILURE OF JUSTICE EXISTS WHERE THERE IS A DENIAL
*124 APPENDIX "A"Continued
OF EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF LAW.
POINT IV JURY CHARGES READ AS A WHOLE DENIED VIOLATED [SIC] DEFENDANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL AND CONSTITUTED DENIAL OF DUE PROCESS OF LAW. (PLAIN ERROR, IN PART)
(A) EVIDENCE CLEARLY INDICATED SUPERVENING RESPONSIBILITY OF COURT TO CHARGE THE JURY WITH MANSLAUGHTER PURSUANT TO N.J.S.A. 2C: 11-4b(3) AS AN AFFIRMATIVE DEFENSE AND FAILURE TO SO INSTRUCT JURY VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL[.]
(1) DEFENDANT WAS DENIED A FAIR TRIAL FOR FAILURE OF THE COURT TO CHARGE THE STATUTE AS A LESSER INCLUDED CRIME. THE RIGHT TO HAVE THE JURY CONSIDER LESSER INCLUDED OFFENSES IMPLICATES "THE VERY CORE OF THE GUARANTEE OF A FAIR TRIAL" STATE V. PURNELL, 126 N.J. []518, []531[, 601 A.2d 175] (1992)[.]
(B) LOWER COURT IMPROPERLY CHARGED THE JURY AS TO THE CHARGES OF FELONY MURDER, ROBBERY, AGGRAVATED MANSLAUGHTER, BURGLARY AND ELUDING A POLICE OFFICER AND AGGRAVATED ASSAULT THUS IMPERMISSIBLY SHIFTING THE BURDEN OF PROOF TO DEFENDANT
APPENDIX "A"Continued
TO ESTABLISH HIS INNOCENCE. COLLARY [SIC] ARGUMENT IS PRESENTED THAT THE LOWER COURT FAILED TO MOLD APPROPRIATE INSTRUCTIONS TO FIT DEFENSE THEORY OF CASE.
(1) LOWER COURT INCORRECTLY CHARGED THE JURY AS TO ROBBERY AS A MATTER OF LAW THUS VIOLATING DEFENDANT'S DUE PROCESS REQUIREMENT THAT THE STATE MUST PROVE EACH ELEMENT OF THE CRIME CHARGED BEYOND A REASONABLE DOUBT.
(a) INTENTIONAL USE OF FORCE
(b) PURPOSEFUL CONDUCT
(1.) AGGRAVATED ASSAULT CHARGE INTERFERED WITH REQUIREMENT TO FIND PURPOSEFUL INTENT TO INFLICT INJURY AN ESSENTIAL ELEMENT OF ROBBERY.
(c) DEFENDANT WAS DENIED DUE PROCESS OF LAW BY LOWER COURT'S PRIOR RULINGS AND JURY CHARGE WHICH WERE TANTAMOUNT TO DIRECTING VERDICT FOR THE PROSECUTION AS TO THE PREDICATE CRIME OF ROBBERY.
(2) JURY CHARGES AS TO FELONY MURDER FAILED TO REQUIRE PROSECUTION TO PROVE ALL THREE ESSENTIAL ELEMENTS.
(a) FAILURE TO INFORM JURY THAT MENTAL STATE OF INTENT TO COMMIT UNDERLYING
*125 APPENDIX "A"Continued
CRIME OR ROBBERY MUST BE FOUND PRIOR TO FINDING DEFENDANT GUILTY OF FELONY-MURDER CONSTITUTES PLAIN ERROR IN THAT IT DENIES THE DEFENDANT DUE PROCESS OF LAW AND CUTS ACROSS THE GRAIN OF RUDIMENTARY CONCEPTS OF CRIMINAL LAW.
(b) LOWER COURT FAILED TO ADEQUATELY CHARGE JURY AS TO "IMMEDIATE FLIGHT[.]"
(c) JURY CHARGE RECEIVED AS TO CAUSATION OF TRAFFIC ACCIDENT VICTIM'S DEATH CONSTITUTED A DIRECTED VERDICT AS TO CULPABILITY AND IS PER SE UNCONSTITUTIONAL[.]
(3) JURY CHARGE AS TO AGGRAVATED MANSLAUGHTER IMPROPERLY RECITED N.J.S.A.[ ]2C:2-3e. ACTUAL RESULT WAS WITHIN THE RISK THEREFORE RECITATION OF STATUTE IMPERMISSIBLY SHIFTED BURDEN OF PROOF THEREBY DENYING DEFENDANT DUE PROCESS OF LAW.
(4) JURY RECEIVED IMPROPER CHARGES AS TO PREDICATE CRIME OF FELONY MURDER THEREFORE IT NEVER CONSIDERED DEATH BY AUTO STATUTE.
(5) JURY WAS NOT CHARGED WITH THE ELEMENT OF CAUSATION AND THEREFORE CONVICTION CAN NOT STAND AS TO A VIOLATION OF N.J.S.A.[] 2C:29-2b[.]
APPENDIX "A"Continued
(6) FAILURE TO CHARGE PURSUANT TO N.J.S.A.[] 2C:20-10 BASED ON FACTS KNOWN BY BOTH THE DEFENSE AND THE PROSECUTION DENIED DEFENDANT DUE PROCESS OF LAW.
POINT V PRESENT RECORD DOCUMENTS FACTUAL BASIS TO SUPPORT DEFENDANT'S CLAIM OF DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL AS REQUIRED BY THE TESTS OF STRICKLAND V. WASHINGTON, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.[2d] 674, (1984); [ ]UNITED STATES V. CRONIC, 466 U.S. 648[, 104 S.Ct. 2039, 80 L.Ed.2d 657] (1984); STATE V. FRITZ, 105 N.J. 42[, 519 A.2d 336] (1987)[;] STATE V. JACK, 144 N.J. 240[, 676 A.2d 545] (1996).
(A) DEFENDANT WAS PREJUDICED BY COUNSEL'S DEFICIENT PERFORMANCE. STRICKLAND V. WASHINGTON, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.[2d] 674 (1984)[.]
POINT VI SENTENCE RECEIVED MUST BE REMANDED FOR PROPER SENTENCE. R.[]2:10-3. DEFENDANT'S SENTENCE IS ILLEGAL, MANIFESTLY EXCESSIVE AND IN VIOLATION OF THE CRIMINAL CODE.
NOTES
[1] The robbery conviction involving victim Gloria Miskerik was in the first degree as alleged in count ten; the convictions regarding the robberies of Diane Dorry and Vera Rattansingh were in the second degree, as alleged in counts twelve and thirteen.
[2] She testified that she still suffers from a hematoma and continuing pain.
[3] The victims also identified defendant in court.
[4] In light of our holding sustaining the three robbery convictions, and the fact that the chase was sufficiently related to a dispatch about one or more, it does not matter if the Dorry robbery followed the Miskerik robbery, even if the police dispatch related only to the former.
[5] Defendant does not contend that if he was fleeing from a robbery he also had to believe that he was being chased from a robbery. While we leave resolution of that issue to an appropriate case, neither the legislative history of the Code of Criminal Justice nor the felony murder cases suggest that defendant had to be chased or know he was being chased for the underlying felony, or that where a pursuit was involved, the pursuing police were aware that a felony occurred, in order to convict a defendant of felony murder. See Cannel, New Jersey Criminal Code Annotated, comment 3 on N.J.S.A. 2C:11-3a(3)(1999); State v. Feaster, 156 N.J. 1, 38, 716 A.2d 395 (1998) (holding that "felony murder is a strict-liability crime"). See also State v. Cooper, 151 N.J. 326, 369-70, 700 A.2d 306 (1997). In any event, the danger and risk to innocent lives are the same.
[6] In light of our conclusion, we need not examine defendant's contentions that he was deprived of adequate discovery and opportunity to develop this subject.
[7] Of course, if a defendant is convicted of purposeful or knowing murder, N.J.S.A. 2C:11-3a(1),(2), as well as felony murder, the predicate felonies would not merge. See State v. Stenson, 174 N.J.Super. 402, 416 A.2d 944 (Law Div.1980), aff'd o.b., 188 N.J.Super. 361, 457 A.2d 841 (App.Div. 1982), certif. denied, 93 N.J. 268, 460 A.2d 671 (1983).
[8] We do not want to be understood as agreeing with defendant's contention that the felony murder or aggravated manslaughter counts of the indictment were defective because the grand jury was not instructed on the manslaughter by eluding alternative, either because it is a lesser included offense, or on the asserted theories that N.J.S.A. 2C:11-4b(3) "precludes" the greater offense and the State must disprove manslaughter by eluding in order to prove a greater offense. We reject those contentions in finding that manslaughter by eluding should be charged as a lesser offense at trial. N.J.S.A. 2C:1-8d, e. See also, e.g., State v. Hogan, supra, 144 N.J. at 235-38, 676 A.2d 533; Crisantos, supra, 102 N.J. at 273, 508 A.2d 167; State v. Eure, 304 N.J.Super. 469, 701 A.2d 464 (App.Div.), certif. denied, 152 N.J. 193, 704 A.2d 23 (1997).
[9] A request to charge on manslaughter by eluding would not have accorded with a strategy of avoiding a felony murder conviction by convincing the jury that the accident did not occur during the immediate flight from a robbery. It would have undermined the felony murder causation defense by exposing defendant to strict liability for the homicide even if he convinced the jury that the flight was not immediate or because of the absence of a predicate felony. The flight did not have to be "immediate" to anything for a manslaughter by eluding conviction. N.J.S.A. 2C:11-4b(3).
[10] The record reflects confirmation of a charge conference in chambers and does not indicate who first made the request.
[11] Manslaughter by eluding, while a second degree crime, has a fifteen-year maximum sentence, see N.J.S.A. 2C:11-4c, while death by auto (or vehicular homicide) carries a ten-year maximum, N.J.S.A. 2C:11-5a; N.J.S.A. 43-6a(2). Cannel notes that the Senate Judiciary Committee statement to the bill which became N.J.S.A. 2C:11-4b(3) asserted that death by auto is a lesser included offense to manslaughter by eluding.