NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3472-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LUIS A. LORA,

    Defendant-Appellant.

_____

> Argued December 2, 2020 – Decided   December 29, 2020
>
> Before Judges Fuentes, Whipple and Firko.
>
> On appeal from the Superior Court of New Jersey,
> Law Division, Somerset County, Indictment No. 14-
> 07-0465.
>
> David J. Reich, Designated Counsel, argued the cause
> for appellant (Joseph E. Krakora, Public Defender,
> attorney; David J. Reich, on the briefs).
>
> Paul H. Heinzel, Assistant Prosecutor, argued the
> cause for respondent (Michael H. Robertson, Somerset
> County Prosecutor, attorney; Paul H. Heinzel, of
> counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

FIRKO, J.A.D.

Defendant Luis Lora appeals from a March 1, 2018 judgment of conviction following a jury trial. He was convicted of third-degree theft of a Mercedes Benz luxury sedan from a dealership's parking lot, second-degree eluding, second-degree aggravated assault while eluding, and third-degree aggravated assault upon a law enforcement officer. The trial court sentenced defendant to nine years' imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and ordered restitution in the amount of $77,382.87. Defendant contends the trial court erred by prohibiting introduction into evidence of the Attorney General's Guidelines on Vehicular Pursuit of a Fleeing Suspect (the Guidelines) and declining to consider the Guidelines as a defense on the element of causation. We disagree, affirm the conviction, but reverse and vacate the award of restitution and remand for an ability to pay hearing.

I.

The following facts are derived from the record. On June 25, 2013, at approximately 7:00 p.m., defendant and co-defendant visited Open Road Mercedes Benz, a car dealership located on Route 22 in Bridgewater. A salesperson, Gregory Fiorino, prepared an intake form called an "upsheet" regarding the customer's contact information and vehicle interest. According

to the upsheet, one of the men's names was Jose Acevedo, and he was interested in purchasing a car having a V-8 engine.

Fiorino showed the men a new "S class" luxury sedan and two pre-owned vehicles—a silver 2012 S550 with a price range of $75,000 to $80,000, and a blue 2010 E550 with a sales price of $42,000. The keys for the two vehicles were kept in a closet out of sight of the customers. Each vehicle had a "smart key," which allows drivers to touch the key fob to the lock and unlock the car. The key fob also had a "valet key," which can unlock the door and start the engine if the smart key battery died.

A surveillance video showed Fiorino and the two men, one wearing a black shirt and the other wearing a white shirt, looking at the two pre-owned cars, sitting in the driver's seats, and returning the vehicles to their parking spaces. The two men left without purchasing either vehicle.

Several hours later on June 26, 2013 at 1:52 a.m., the dealership's motion-sensitive surveillance system was activated, notifying police of a potential vehicle theft. The system showed the blue Mercedes with its headlights on at 1:53 a.m., and the men removing a flag from the window, used by the dealership to identify pre-owned vehicles. At 1:54 a.m., the video revealed the silver Mercedes with its headlights on. The man wearing the

white shirt drove off with the blue Mercedes, and the man wearing the black shirt drove off in the silver Mercedes.

The prior evening when the men were at the dealership, they performed a "key swap," meaning they gave the dealership back "dummy keys," identical to the actual set, and retained the real keys. The dealership had no way of knowing the real keys were missing without attempting to start the vehicles with the "dummy" pair. The dealership's general manager called the ploy "unfortunately . . . very common."

At 1:54 a.m., Bridgewater Township Patrol Sergeant Michael Maxwell responded to the dispatch call advising of the theft. He drove down Route 22, passed the dealership, and proceeded to take the onramp for Route 287 South, when he observed the two Mercedes vehicles matching the description. Maxwell drove behind the blue Mercedes, activated his emergency lights, and attempted to effectuate a motor vehicle stop. Almost immediately, the driver of the blue Mercedes pulled over to the shoulder lane. The officer observed the driver was dark-skinned, wearing a black baseball cap and a white shirt. As Maxwell approached the driver's door, the driver shifted the car into drive and sped away. Maxwell radioed other units to advise them of what had occurred while quickly returning to his vehicle.

Another Bridgewater Township patrol officer, Brian Schubert, received the same dispatch call regarding the two stolen Mercedes and responded to the incident simultaneously. Because Maxwell was pursuing the blue Mercedes, Schubert radioed that he would drive ahead to track the silver one. Schubert passed by Maxwell's vehicle on Route 298 South as he was pulling the blue Mercedes over.

Schubert was only about a quarter mile past where Maxwell had pulled the blue vehicle over when he was advised on his radio that the driver of the blue Mercedes had fled. Schubert chose to abandon his pursuit of the silver car and instead slowed down to wait for the blue Mercedes to effectuate a stop of that vehicle instead. Schubert noticed the blue car approaching at a "high rate of speed." He moved his car from the center of the highway to the left, and observed the approaching car move in the same direction. Schubert responded by moving his car to the right, which was also mirrored by the blue Mercedes.

As the vehicle moved closer, Schubert moved to the right again and the vehicle followed, this time making impact with the police car in front of it. Schubert testified that he believed the Mercedes attempted to move to the left either right before or simultaneously upon making impact with his vehicle. A motor vehicle recording (MVR) on Schubert's police vehicle captured the

5

accident. During summation, defense counsel characterized the same set of facts as the officer's vehicle repeatedly moving in front of the blue Mercedes to prevent it from passing. He then claimed the police car attempted to "hip check" and stop the Mercedes, causing the car to hit him.

Another patrol officer, Joseph Greco, was following behind Schubert when the collision occurred. Greco never lost sight of the blue Mercedes and watched as it approached Schubert's police car. According to Greco's testimony, the blue Mercedes was driving "recklessly" and had been mimicking Schubert's movements before the collision.

The front of the Mercedes came into contact with the passenger side rear bumper of Schubert's police car. The police car spun counterclockwise, slid across three left lanes of the highway into the center median, and eventually landed on the southside of the highway facing north. The Mercedes was also stopped near the median, with heavy damage to the front-end of the vehicle.

Schubert was able to exit his vehicle and assist the other officers with apprehending the driver of the Mercedes. This tactical procedure consisted of Schubert and the other officers using Maxwell's police vehicle, which had since arrived at the scene of the accident, as a shield to slowly approach the stolen car with their weapons drawn while giving instructions to the driver to

safely exit the vehicle. However, the Mercedes was unoccupied by the time the officers approached it.

A few minutes later, Schubert advised Maxwell that he felt pain in his lower back and neck. The rescue squad arrived shortly thereafter and transported him to the hospital. While he was at the hospital, Schubert experienced increased muscle spasms and tightness in his lower back, as well as tightness and restricted movement in his neck.

At the scene of the collision, Maxwell instructed the other officers to search the area for the driver of the Mercedes. Maxwell also requested a helicopter, K9 units, and the county accident reconstruction team for assistance. A canvass of the area was not fruitful, but the officers recovered the driver's black baseball cap, towel, and cell phone that were left inside the vehicle.

The cell phone was brought to the New Jersey Regional Computer Forensics Lab and was searched pursuant to a communications data warrant. A search of the cell phone revealed a Facebook page belonging to "Lenny" Lora and his date of birth. Motor Vehicle Commission records contained a photograph of an individual named Luis Lora with the same birthdate. A buccal swab taken from defendant on February 28, 2014 matched the DNA on

7

the air bag of the stolen vehicle, and the baseball cap found in the car. Defendant was taken into custody on July 14, 2014.

Defendant was charged with third-degree theft of an automobile, N.J.S.A. 2C:20-3(a) (count one); second-degree eluding, N.J.S.A. 2C:29-2(b) (count two); second-degree aggravated assault while eluding, N.J.S.A. 2C:12-1(b)(6) (count three); and third-degree aggravated assault upon a law enforcement officer, N.J.S.A. 2C:12-1(b)(5) (count four).

On September 28, 2017, the State moved in limine to bar defense counsel from introducing evidence regarding the Guidelines and any argument that the officers contributed to the collision. The trial court heard oral argument on the motion and issued a written opinion the following day. The court ruled that the Guidelines would not be allowed into evidence and precluded defense counsel from arguing that the officer's deviation from the Guidelines impacted the causation element of N.J.S.A. 2C:12-1(b)(6), a strict liability offense. However, the court permitted defense counsel to use the Guidelines for impeachment purposes and to argue that the officers' conduct and any deviation from the Guidelines impacted the State's ability to meet its burden of proof on the mens rea element of N.J.S.A. 2C:12-1(b)(5)(a). A memorializing order was entered.

Trial was conducted before a jury in September and October 2017. The jury found defendant guilty on all counts. On October 25, 2017, defendant moved for a new trial. The court heard oral argument on the motion on January 25, 2018, denied defendant's motion, and entered a memorializing order that day.

On February 22, 2018, the court sentenced defendant to nine years' imprisonment on count two; a concurrent nine-year prison term with an 85% percent parole disqualifier and three years of parole supervision, pursuant to NERA on count three; and concurrent five-year prison terms on counts one and four. The court also ordered $77,382.87 in restitution and a one-year driver's license suspension. A judgment of conviction was entered on March 1, 2018. This appeal followed.

In his counseled brief, defendant presents the following arguments:

> POINT I: [DEFENDANT] MUST BE GRANTED A NEW TRIAL IN VIEW OF THE PREJUDICE HE SUSTAINED AS A RESULT OF THE COURT'S LEGALLY ERRONEOUS PROHIBITION OF THE USE OF EVIDENCE CONCERNING OFFICER SCHUBERT'S VIOLATION OF THE ATTORNEY GENERAL'S GUIDELINES REGARDING MOTOR VEHICLE PURSUIT.
>
> POINT II: A NEW TRIAL IS REQUIRED IN VIEW OF ERRONEOUS JURY INSTRUCTIONS RELATING TO THE CAUSATION COMPONENT OF THE AGGRAVATED ASSAULT WHILE

ELUDING CHARGE AND THE ATTORNEY GENERAL'S GUIDELINES.

POINT III: A REVERSAL IS WARRANTED IN VIEW OF THE PROSECUTOR'S IMPROPER REMARKS DURING HIS SUMMATION (Not raised below).

POINT IV: THE TRIAL COURT ERRED IN ORDERING RESTITUTION WITHOUT CONDUCTING A HEARING CONCERNING EITHER THE AMOUNT OF RESTITUTION PROPERLY OWING OR [DEFENDANT'S] ABILITY TO PAY.

In a supplemental pro se brief, defendant asserts the following arguments:

POINT I: THE TRIAL COURT'S FAILURE TO GIVE ADEQUATE JURY CHARGE(S)/ INSTRUCTIONS DEPRIVED APPELLANT DUE PROCESS AND A FAIR TRIAL [U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. I, ¶¶ 1, 10.] (Not raised below).

    (a) FAILURE TO GIVE NON-PRODUCTION OF WITNESS/ ADVERSE INFERENCE INSTRUCTION A/K/A CLAWANS CHARGE.

    (b) FAILURE TO GIVE ADEQUATE "INTERESTED WITNESS" CHARGE

        (i) STATE'S [BOLSTERING] POLICE CREDIBILITY

      (c)     FAILURE TO CLARIFY "CAUSATION" CHARGE

      (d)     FAILURE TO CHARGE ALIBI AND MISIDENTIFICATION DEFENSE CHARGE

<u>POINT II</u>: APPELLANT'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE AND THEREFORE MUST BE REVERSED [U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. I, ¶¶ 1, 10; N.J.S.A. 2C:1-13.] (Partially Raised Below).

      (A)     THEFT OF MOVABLE PROPERTY

      (B)     AGGRAVATED ASSAULT UPON LAW ENFORCEMENT OFFICER N.J.S.A. 2C:12-1(b)(6) 2C:12-1(b)(5)

      (C)     BODILY INJURY ELEMENT

<u>POINT III</u>: TRIAL COURT UNDULY ENCROACHED UPON APPELLANT'S EXERCISE OF HIS RIGHT TO TESTIFY ON HIS OWN BEHALF [U.S. CONST. AMENDS. V, VI, XIV; N.J. CONST. ART. I, ¶¶ 1. 10.] (Not raised below).

<u>POINT IV</u>: THE TRIAL COURT UNDULY INTERFERED WITH DEFENSE COUNSELOR'S REPRESENTATION WHEN THE COURT REFUSED TO ALLOW JURORS THE OPPORTUNITY TO FULLY CONSIDER THE ATTORNEY GENERAL'S GUIDELINES FOR MOTOR VEHICLE PURSUITS [U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. I, ¶¶ 1, 10.] (Partially raised below).

A-3472-17T2

POINT V: THE SENTENCING COURT FAILED TO FOLLOW AND APPLY THE APPROPRIATE SENTENCING GUIDELINES WHEN ANALYZING, APPLYING AND BALANCING AGGRAVATING AND MITIGATING FACTORS, THUS VIOLATING APPELLANT'S DUE PROCESS RIGHTS [U.S. CONST. AMEND. XIV; N.J. CONST. ART. I, ¶ 1.] (Partially raised below).

    (A) THE SENTENCING COURT INFLATED DEFENDANT'S CRIMINAL HISTORY WHEN ASSESSING AGGRAVATING AND MITIGATING FACTORS PURSUANT TO [N.J.S.A.] 2C:44-1(a) [AND] (b) BY DOUBLE COUNTING INDIVIDUAL COUNTS OF THE INDICTMENT

    (B) DEFENDANT DID NOT CONTEMPLATE THAT HIS CONDUCT WOULD CAUSE OR THREATEN SERIOUS HARM [N.J.S.A.] 2C:44-1(b)(2)

    (C) THE VICTIM OF DEFENDANT'S CONDUCT INDUCED OR FACILITATED ITS COMMISSION [N.J.S.A.] 2C:44-1(b)(5)

    (D) DEFENDANT HAS NO CRIMINAL HISTORY OR MINIMUM HISTORY OF CRIMINAL ACTIVITY [N.J.S.A.] 2C:44-1(b)(7)

    (E) DEFENDANT'S CONDUCT WAS THE RESULT OF CIRCUMSTANCES UNLIKELY

12

TO REOCCUR [N.J.S.A.] 2C:44-1(b)(8)

(F) RISK DEFENDANT WILL COMMIT ANOTHER OFFENSE [N.J.S.A.] 2C:44-1(A)(3)

POINT VI: THE SENTENCING COURT FAILED TO MERGE AGGRAVATED ASSAULT CONVICTIONS DENIED APPELLANT DUE PROCESS [U.S. CONST. AMEND XIV; N.J. CONST. ART. I, ¶ 1] (Not raised below).

POINT VII: CUMULATIVE EFFECT OF ALL ERRORS DENIED APPELLANT HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS [U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. I, ¶¶ 1, 10] (Not raised below).

II.

We note defendant raises several arguments in his counsel and pro se briefs for the first time on appeal. As the Supreme Court explained, "[a]ppellate review is not limitless." State v. Robinson, 200 N.J. 1, 19 (2009). It is well-established that "our Rules envision the making of contemporaneous objections as the principal and almost exclusive means of preserving an issue for appeal." Id. at 20 (citing R. 1:7-2).

In addition, defendant did not object at trial to the prosecutor's alleged improper remarks during his summation; the jury charge; or raise constitutional challenges. Therefore, we consider these issues under the plain error standard, that is whether the error was "of such a nature as to have been

13

clearly capable of producing an unjust result . . . ." R. 2:10-2. Not any possibility of an unjust result will suffice as plain error, only one "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). Applying these legal principles, none of the alleged errors not raised before the trial court were clearly capable of producing an unjust result.

## III.

We first consider whether the trial court erred in barring the use of the Guidelines as evidence related to causation in the strict liability offense codified in N.J.S.A. 2C:12-1(b)(6). Specifically, defendant claims Schubert's purported violation of the Guidelines was a vital component to his defense in support of his theory that the officer was out-of-control and was the cause in fact of the collision. Defendant asserts that the court ignored the plain language of N.J.S.A. 2C:12-1(b)(6); erroneously compared the analysis to the eluding statute, N.J.S.A. 2C:29-2(b); erroneously predicated his ruling on irrelevant case law; failed to consider the text of the model jury charges; and incorrectly treated N.J.S.A. 2C:12-1(b)(6) and N.J.S.A. 2C:12-1(b)(5)(a) as dissimilar.

Defendant contends there is a substantial likelihood the errors impacted the ultimate outcome of the case. The trial court granted the State's motion in

14                                        A-3472-17T2

limine, in part, and prevented defendant from introducing the Guidelines into evidence as a means of defense to the two aggravated assault charges and precluded him from arguing that the officers contributed to the collision. The court also denied the State's motion in limine, in part, focusing on the different mens rea requirements of the respective statutes at issue.

The Guidelines authorize a pursuit if any officer reasonably believes a suspect committed a second- or first-degree offense, or certain other specified offenses, including automobile theft, or if the officer reasonably believed the suspect posed an immediate threat to public safety. Before engaging in the pursuit, the pursuing and supervising officers must also consider the risk to the public, the danger, and the pursuing officer's characteristics.

Once the decision to pursue is made, the Guidelines require officers to activate their emergency sirens and signals and continually apprise communications officers of "pertinent information" including their speed. The Guidelines require that supervising officers "ensure, for the duration of the pursuit, that this policy and agency procedures are followed by all officers." Revision to the New Jersey Police Vehicular Pursuit Policy issued by (former) Attorney General Anne Milgram to the Superintendent of the New Jersey State Police, All County Prosecutors, and All Law Enforcement Chief Executives on Sept. 17, 2009, § V(E). The supervisor must "decide as quickly as possible

whether or not the pursuit should continue." Id. at § V. The supervisor must be satisfied that the suspect has committed an enumerated offense or reasonably believes the violator poses an immediate threat to public or officer safety. Id. at § V(A). The pursuit must be terminated if the supervisor concludes "the danger to the pursuing officers or the public outweighs the necessity for immediate apprehension of the violator." Id. at § V(B).

A trial court's evidential ruling is "subject to limited appellate scrutiny." State v. Buckley, 216 N.J. 249, 260 (2013) (quoting State v. Buda, 195 N.J. 278, 294 (2008)) (internal quotation marks omitted). It should be upheld "absent a showing of an abuse of discretion" or "a clear error of judgment." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)) (internal quotation marks omitted). A reviewing court applying this standard "should not substitute its own judgment for that of the trial court, unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted." Ibid. (citations and internal quotation marks omitted). However, any "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" and are reviewed de novo. Buckley, 216 N.J. at 260-61 (citations omitted).

Under N.J.S.A. 2C:12-1(b)(6), a person is guilty of aggravated assault if he "[c]auses bodily injury to another person while fleeing or attempting to

elude a law enforcement officer . . . or while operating a motor vehicle . . . . Notwithstanding any other provision to the contrary, a person shall be strictly liable for a violation of this paragraph . . . ." In its motion, the State contended that the aggravated assault while eluding charge is a strict liability crime, so whether the officers deviated from the Guidelines or were otherwise contributorily responsible was irrelevant to the trial court's analysis. Alternatively, the defense argued N.J.S.A. 2C:12-1(b)(6) has a causation element—whether defendant's actions in eluding arrest created the risk of death or bodily injury—and that the Guidelines were relevant to whether the officers were responsible for creating that risk and causing the injury.

In its statement of reasons, the trial court explained:

> Regarding the issue of causation in the [a]ggravated [a]ssault while eluding arrest charge under N.J.S.A. [2C:12-1(b)(6)], the Guidelines['] probative value as to whether [d]efendant's flight and attempts to elude created a risk of death or bodily injury is limited and the risk of confusing or misleading the jury outweighs that probative value. A reasonable jury could confuse deviation from the Guidelines with causation in creating the risk outlined in the statute.
>
> . . . .
>
> [T]he [c]ourt [finds] the probative value of the Guidelines to be limited as it relates to the causation element. The element of causation does not present the issue of whether [d]efendant's conduct during the flight and eluding created the risk of death or injury, but rather whether the act of flight and eluding itself

17

created a risk of the same. Whether or not the officers' conduct in pursuing [d]efendant deviated from the Guidelines does not aid the trier of fact in reaching a conclusion on this causation element and instead[,] presents a significant risk of confusing or misleading the jury. The [c]ourt is precluding [d]efendant from making the argument that deviation from the Guidelines somehow impacts this element of causation of [N.J.S.A. 2C:12-1(b)(6)], [d]efendant may refer to the Guidelines during cross [-]examination for the limited purpose of impeachment.

Thus, the court granted the State's request as to N.J.S.A. 2C:12-1(b)(6) and precluded defendant's use of the Guidelines or any argument in respect of the officers' contributory conduct on the aggravated assault while eluding charge.

First, defendant argues the trial court ignored the plain language of the statute, which requires a defendant cause bodily injury to another person in order to be held responsible, and that the court mistakenly emphasized N.J.S.A. 2C:12-1(b)(6) was a strict liability offense. Instead, defendant contends Schubert's own actions cutting off the defendant while he was driving, in violation of the Guidelines, resulted in a self-inflicted injury to the officer and could not be attributed to the but-for actions of defendant, regardless of the mens rea required. Had the Guidelines been admitted as evidence, defendant claims the jury would have concluded Schubert's actions while operating his police car clearly violated the Guidelines and induced his own injury. Relatedly, defendant challenges the trial court's use of the

language from the eluding statute, N.J.S.A. 2C:29-2(b), in its analysis granting

that portion of the State's motion.

The full text of N.J.S.A. 2C:12-1(b)(6), aggravated assault while

eluding, includes:

> Aggravated assault. A person is guilty of aggravated assault if the person:
>
> Causes bodily injury to another person while fleeing or attempting to elude a law enforcement officer in violation of subsection b. of [N.J.S.A] 2C:29-2 or while operating a motor vehicle in violation of subsection c. of [N.J.S.A.] 2C:20-10. Notwithstanding any other provision of law to the contrary, a person shall be strictly liable for a violation of this paragraph upon proof of a violation of subsection b. of [N.J.S.A.] 2C:29-2 or while operating a motor vehicle in violation of subsection c. of [N.J.S.A.] 2C:20-10 which resulted in bodily injury to another person . . . .

The eluding statute, N.J.S.A. 2C:29-2(b), incorporated by reference into

N.J.S.A. 2C:12-1(b)(6), mandates:

> Any person, while operating a motor vehicle on any street or highway in this State . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop commits a crime of the third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person.

Considered together, an individual who eludes a law enforcement officer in a way that creates a risk of injury or death, as described in the eluding statute, who actually does cause an injury to another person, is guilty under the aggravated assault while eluding statute. Having reviewed the record, to the extent the trial court referred to the eluding statute analyzing the aggravated assault while eluding statute, we discern no reversible error. As long as a defendant knowingly flees or attempts to elude a law enforcement officer, and the act of doing so "creates a risk of death or injury to any person," the defendant is guilty of second-degree eluding. State v. Thomas, 187 N.J. 119, 137 (2006). There is no mens rea element attributable to the secondary portion of that statute. Ibid. Moreover, if the defendant's act of eluding causes a bodily injury to another, defendant is guilty of aggravated assault while eluding. N.J.S.A. 2C:12-1(b)(6).

Likewise, there is no mens rea element in the aggravated assault while eluding statute, and therefore, no requirement a defendant intend to cause bodily injury to another. See N.J.S.A. 2C:12-1(b)(6). Therefore, a defendant need not knowingly create a risk or purposely cause an injury to be found guilty of aggravated assault while eluding if the defendant is found to have the requisite culpability for fleeing or eluding the law enforcement officers under the eluding statute. Thomas, 187 N.J. at 137.

20

There can be no consideration of the aggravated assault while eluding charge without an analysis of the eluding statute.  To be found guilty of aggravated assault while eluding, a defendant must: (1) knowingly flee or attempt to elude a law enforcement officer after being signaled to stop; (2) create a risk of bodily injury or death; and (3) cause bodily injury to another while fleeing.  See State v. Green, 318 N.J. Super. 361, 381 (App. Div. 1999) (reversing the conviction for aggravated assault while eluding because the judge failed to instruct on the charge entirely, or "at the very least, referr[ing] to her prior instructions on eluding a police officer and bodily injury."). Therefore, any reference the trial court made to N.J.S.A. 2C:29-2(b) or its language was proper and necessary to its decision.  We are satisfied the trial court did not err in its approach to the N.J.S.A. 2C:12-1(b)(6) analysis.

Because it is enough for defendant to be found guilty of aggravated assault while eluding if the State proves that he "knowingly fle[d] or attempt[ed] to elude any police or law enforcement officer" and that an injury to another occurred as a result, the trial court found the officer's actions would not contribute to the statutory analysis and precluded defendant from using the Guidelines to make the argument otherwise.  The trial court did not abuse its discretion in doing so.

21

Aggravated assault while eluding is a strict liability offense. See N.J.S.A. 2C:12-1(b)(6). To convict a defendant of this offense, the jury must find the following two elements beyond a reasonable doubt: (1) defendant caused bodily injury to another person; and (2) defendant did so while fleeing or attempting to elude a law enforcement officer in violation of the statute defining the eluding offense. According to the Criminal Code's section titled, in part, Causal Relationship Between Conduct and Result, "[w]hen causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a probable consequence of the actor's conduct." N.J.S.A. 2C:2-3(e). In the strict liability offense codified in N.J.S.A. 2C:12-1(b)(6), whether the police officers involved in the pursuit of an eluding individual adhere to the Attorney General Guidelines is neither a relevant consideration nor an affirmative defense.

In the matter under review, the actual result—Schubert's injury—is not "established" unless the injury was "the probable consequence" of defendant's actions. The trial court identified State v. Pantusco, 330 N.J. Super. 424 (App. Div. 2000) as "analogous" to the case at hand. In Pantusco, the defendant was charged with felony murder after killing an innocent motorist in an automobile crash while fleeing from police. Id. at 428. In the context of felony murder, also a strict liability crime, we articulated, "the fact that one or more police

officers may have deviated from the Guidelines for a safe pursuit, or otherwise proceeded unsafely through heavy traffic, cannot excuse defendant's conduct or his statutory responsibility." Id. at 442. Because police deviation from "preferred practice" is far from a "remote" possibility, we held that the resulting fatal accident was not so unexpected or unusual as to make it unjust to hold defendant responsible for the victim's death. Ibid.

The only actions able to break the causal link in strict liability crimes are those that are so remote or unforeseeable as to forgive the defendant's culpability. That a police officer would pursue a defendant recklessly driving a stolen vehicle, in a manner that failed to comport with preferred police behavior, is far from remote or unforeseeable. A police-related injury in the pursuit of a criminal is a risk created by that criminal, and we should not allow him to escape liability for his behavior. To hold otherwise would be inconsistent with the statutory framework and sound case law. Unquestionably, Schubert's injury was the direct consequence of defendant's actions.

Because defendant eluded the police, creating a risk and resulting in Schubert's injury, defendant violated the aggravated assault while eluding statute, N.J.S.A. 2C:12-1(b)(6). Police deviation from preferred procedure or mandated Guidelines is not a remote or unforeseeable intervening cause of the

23

harm. Nothing Schubert did in his pursuit broke the chain of causation nor provided defendant with a cognizable defense.

Given the trial court's weighing of the applicable statutes and case law, it aptly concluded that "the probative value of the Guidelines [is] limited as it relates to the causation element" because the issue of causation is not about whether defendant created a risk of harm and caused an injury due to his own conduct, but due to the act of fleeing itself. And, allowing the Guidelines in as evidence would "not aid the trier of fact in reaching a conclusion on [the] causation element and instead presents a significant risk of confusing or misleading the jury." Under the circumstances, we agree with the trial court's interpretation of the relevant statutes and case law in preemptively barring defendant from introducing the Guidelines as evidence to the contrary.

Additionally, defendant claims the trial court ignored the language in the model jury charge for N.J.S.A. 2C:12-1(b)(6), which includes language about the statute's causation element. The causation language defendant refers to mirrors the "probable consequence" language of N.J.S.A. 2C:2-3(e). Defendant contends that if Schubert had not cut in front of the driver of the Mercedes, the accident would not have occurred, making the incident too remote or accidental hold defendant liable. Stated differently, defendant's argument is predicated on the absurd proposition that the police officer, who

24

was driving his marked police vehicle at a speed of less than fifty miles per hour, should have yielded the right of way to defendant, who was attempting to elude apprehension while driving a stolen car.

We are not persuaded by defendant's argument. As expressed above, since a police-related injury in a pursuit that strays from preferred procedures does not constitute unforeseeable conduct, the language contained in the model jury instructions is not supportive of defendant's argument.

"Correct [jury] charges are essential for a fair trial," and therefore, "erroneous instructions on material points are presumed to be reversible error." State v. Martin, 119 N.J. at 15. A reviewing court "must evaluate a challenged jury instruction in the context of the entire charge to determine whether the challenged language was misleading or ambiguous . . . ." State v. Nelson, 173 N.J. 417, 447 (2002). Generally, an appellate court "will not reverse if an erroneous jury instruction was incapable of producing an unjust result or prejudicing substantial rights." Washington v. Perez, 219 N.J. 338, 351 (2014) (citations and internal quotation marks omitted). However, the instruction will constitute reversible error "where the jury outcome might have been different had the jury been instructed correctly." Ibid. (citations omitted). We are satisfied there was no error in the charge as given even though it did not use the exact verbiage as the model jury charge.

25

Lastly, defendant claims the court's refusal to allow the use of the Guidelines as to the aggravated assault while eluding charge but allowing their introduction on the other aggravated assault charge, underscores the error in the trial court's analysis. Specifically, defendant challenges that the court deemed the Guidelines "highly probative" in regard to N.J.S.A. 2C:12-1(b)(5)(a), but not for N.J.S.A. 2C:12-1(b)(6). Defendant claims the Guidelines are equally probative as to these related statutes.

N.J.S.A. 2C:12-1(b)(5)(a) charges that an individual is guilty of aggravated assault if the person commits a simple assault as defined in N.J.S.A. 2C:12-1(a) upon "[a]ny law enforcement officer acting in the performance of the officer's duties while in uniform or exhibiting evidence of authority or because of the officer's status as a law enforcement officer . . . ." Under that statute, defendant must "knowingly" or "recklessly" cause bodily injury to the law enforcement officer. See N.J.S.A. 2C:12-1(a).

According to the Code, "[w]hen the offense requires that the defendant purposely or knowingly cause a particular result, the actual result must be within the design or contemplation . . . of the actor, or, if not, the actual result must involve the same kind of injury or harm as that designed or contemplated and not be too remote, accidental . . . or dependent on another's volitional act . . . ." N.J.S.A. 2C:2-3(b). Similarly, "[w]hen the offense requires that the

26                                                    A-3472-17T2

defendant recklessly or criminally negligently cause a particular result, the actual result must be within the risk of which the actor is aware, or, if not, the actual result must involve the same kind of injury . . . as the probable result and must not be too remote, accidental . . . or dependent on another's volitional act . . . ." N.J.S.A. 2C:2-3(b).

Under this statute, as opposed to the aggravated assault while eluding statute, the trial court found the Guidelines "highly probative as to the cause of the bodily injuries resulting from the collision and [d]efendant's intent regarding the same." In a Rule 403 analysis, which allows a court to exclude relevant evidence "if its probative value is substantially outweighed" by the risk of undue prejudice, confusion of the issues, or misleading the jury, the trial court determined the officer's conduct before the collision causing the bodily injury "[was] extremely relevant to whether [d]efendant acted 'knowingly', 'purposefully', or with 'reckless' intent or if [d]efendant's conduct 'caused' the resulting bodily injury" so as to contest the State's ability to prove the mens rea element of N.J.S.A. 2C:12-1(b)(5)(a). However, the court found the Guidelines would "not aid the trier of fact in reaching a conclusion on [the] causation element [of N.J.S.A. 2C:12-1(b)(6)] and instead presents a significant risk of confusing or misleading the jury."

We are convinced the trial court did not abuse its discretion in disallowing the Guidelines from being introduced into evidence as to the aggravated assault while eluding charge, but not the aggravated assault of an officer charge. Moreover, the court's decision was not "so wide of the mark that a manifest denial of justice resulted." See Perry, 225 N.J. at 233. The court based its ruling on the probative value of the evidence when compared to its potential to confuse or mislead the jury.

Because defendant intended to use the Guidelines as evidence that Schubert contributed to the cause of the accident, but the officer's actions were irrelevant to the statutory analysis of N.J.S.A. 2C:12-1(b)(6), the Guidelines could not be probative of that issue and would only serve to confuse or mislead the jury. As long as the jury found that defendant knowingly eluded the police, and that the eluding, regardless of defendant's intention or the officer's actions, created a risk and caused an accident, no other foreseeable intervening causes matter. Consequently, introducing the Guidelines into evidence to speak to the officer's actions would serve no purpose.

However, because N.J.S.A. 2C:12-1(b)(5)(a) requires defendant knowingly or recklessly cause bodily injury, defendant's actions are more probative to that charge. If the jury considered the officer's actions in light of the Guidelines and determined Schubert induced and caused the accident, the

A-3472-17T2

mens rea element of aggravated assault of a law enforcement officer would not be met. Therefore, the trial court properly concluded that as to the aggravated assault of an officer charge, the probative value outweighed any prejudice to the introduction of the Guidelines as evidence.

We conclude the trial court was well within its discretion to allow the Guidelines to be introduced as evidence as to the aggravated assault of a law enforcement officer charge, which includes a mens rea element that makes causation relevant, but not as to the aggravated assault while eluding charge, a strict liability crime, not requiring a showing of criminal intent.

IV.

Next, defendant claims the trial court erred by failing to include portions of the aggravated assault while eluding charge regarding causation in its jury charge. Defendant also contends the court did not tailor the jury charge to defendant's theory of the case and that the instructions as to the Guidelines were confusing and unnecessary. In his pro se brief, defendant asserts that the court failed to give other relevant charges, including those relating to the non-production of a witness, interested witnesses, and a misidentification defense, warranting reversal and a new trial.

"Appropriate and proper charges to a jury are essential for a fair trial." Green, 86 N.J. at 287. The court must "explain the controlling legal principles

29

and the questions the jury is to decide." Martin, 119 N.J. at 15. Instructions demand careful attention and "must provide a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." State v. Montalvo, 229 N.J. 300, 320 (2017) (citations and internal quotation marks omitted). Proper instruction is so critical that "erroneous instructions on material points are presumed to be reversible error." Martin, 119 N.J. at 15. Adequate charges are particularly important where the State and the defendant offer contrasting theories of causation. Ibid.

Where a party requests a particular charge, "[t]he court should instruct the jury with respect to [the request if it involves] essential and fundamental issues and . . . deal[s] with substantially material points." Green, 86 N.J. at 290. Typically, a judge must "comply with requests for instructions that correctly state the controlling legal principles in relation to the evidence, and concern the material issues and points of the case." Ibid. (quoting State v. Spruill, 16 N.J. 73, 81 (1954)). However, a court need not "utilize the language of the request and none need be honored if the matter has otherwise been covered . . . ." Ibid. (citing State v. Thompson, 59 N.J. 396, 411 (1971)).

Defendant first challenges the court's instructions as to the causation element of the aggravated assault while eluding charge. Defendant claims that

30

a pivotal issue in the case was the parties' competing causation claims. The State claimed defendant caused the collision and resulting injury while defendant argued Schubert caused the collision and injury. Defendant contends that proper jury instructions would have given recognition and context to both positions, but the charges in this case omitted elements requiring the State to prove that Schubert's injury was a probable consequence of defendant's actions. Because defendant requested a charge that would have been proper and the trial court replaced it with an abbreviated version, defendant demands a reversal.[1]

The relevant portion of the model jury charge on N.J.S.A. 2C:12-1(b)(6) reads:

> In order for you to find the defendant guilty of this crime the State must prove the following elements beyond a reasonable doubt:
>
> > 1. That defendant caused bodily injury to another person; and
> >
> > 2. That defendant did so while fleeing or attempting to elude a law enforcement officer in violation of the statute defining the eluding offense.
>
> Bodily injury is defined as physical pain, illness or any impairment of physical condition. In order to find

---

[1] Defendant conceded that his proposed jury instruction was "virtually identical" to the model jury charge for the statutory violation.

that the defendant caused bodily injury to (victim), you must find beyond a reasonable doubt, first, that (victim) would not have been injured but for defendant's conduct, and, second, that the bodily injury was a probable consequence of the defendant's conduct. A probable consequence is one which is not too remote, accidental in its occurrence or too dependent on the conduct of another to have a just bearing on defendant's liability or the gravity of his offense.

I have already instructed you on the crime of eluding, and you should apply those instructions here to determine whether the State has proven beyond a reasonable doubt that defendant was fleeing or attempting to elude a law enforcement officer.

In conclusion, the two elements the State must prove beyond a reasonable doubt are:

> 1. That defendant caused bodily injury to another person; and
>
> 2. That defendant did so while fleeing or attempting to elude a law enforcement officer in violation of the statute defining the eluding offense.

If you are satisfied that the State has proven both of these elements beyond a reasonable doubt, then you must find the defendant guilty of aggravated assault. However, if you are not convinced that each of the elements has been proven beyond a reasonable doubt, then you must find the defendant not guilty.

[Model Jury Charges (Criminal), "Aggravated Assault – While Fleeing Or Attempting To Elude A Law Enforcement Officer (N.J.S.A. 2C:12-1b(6))" (approved Dec. 13, 1999).]

32

At the close of trial, the court charged:

> In order for you to find the defendant guilty of this crime, the State must prove the following elements beyond a reasonable doubt:
>
>> 1. The defendant caused bodily injury to another person; and
>>
>> 2. The defendant did so by fleeing or attempting to elude a law enforcement officer in violation of the statute defining the eluding offense.
>
> Bodily injury is defined as a physical pain, illness or impairment of physical condition.
>
> I've already instructed you on the crime of eluding, and you should apply those instructions here to determine whether the State has proven beyond a reasonable doubt that the defendant was fleeing or attempting to elude a law enforcement officer.
>
> Causation has a special meaning under the law. To establish causation, the State must prove the following beyond a reasonable doubt:
>
> First, but for defendant's conduct, the result in question would not have happened. In other words, without defendant's actions, the result would not have occurred.
>
> Second, the actual result must have been a probable consequence of the defendant's conduct. It must not be too remote, too accidental in its occurrence or too dependent . . . on another's volitional act to have a just bearing on the defendant's liability or on the gravity of his offense.

As stated, the two elements the State must prove beyond a reasonable doubt are:

> 1. The defendant caused bodily injury to another person; and
>
> 2. The defendant did so while fleeing or attempting to elude a law enforcement officer in violation of the statute defining the eluding offense, N.J.S.A. 2C:29-2[(b)].

> If you are satisfied that the State has proven both of these elements beyond a reasonable doubt, then you must find the defendant guilty of aggravated assault. However, if you . . . are not convinced that each of the elements has been proven beyond a reasonable doubt, then you must find the defendant not guilty.

> [(quotation marks omitted).]

We are satisfied there was no error with the charge as given. The charge was essentially the same as the model charge, not a "truncated version" as claimed by defendant. The court provided the jury with both the "but for" and "probable consequence" components of causation on the aggravated assault while eluding charge, which reflected both parties' arguments. The court's later charge on aggravated assault on a law enforcement officer instructed the jury on various causation requirements. In addition, the court explained fundamental parts of the charge, including causation. The jury charge, taken as a whole, was "incapable of producing an unjust result or prejudicing substantial rights," let alone error. See Washington, 219 N.J. at 351.

Moreover, the jury charge as to the Guidelines was appropriate, and we discern no error in the court instructing the jury that the Guidelines "do not have the force of law." We also consider defendant's claim that the court erred by not instructing the jury on the non-production of witnesses, interested witnesses, and a misidentification defense. Defendant contends the first instruction was required because the State alleged Schubert sustained bodily injury as a result of the accident without presenting medical witnesses or documents to substantiate the claims. Defendant asserts the second instruction was required because most of the State's witnesses were law enforcement and have a propensity to embellish the truth to achieve a particular outcome. Lastly, defendant contends the third instruction was required because he continuously contested his involvement in the offense and was entitled to an instruction addressing identification as an issue in the case. Defendant's arguments are devoid of merit.

V.

Defendant argues that the prosecutor improperly suggested during summation that Schubert had no reason to contrive his version of events and inappropriately asserted that defendant intentionally rammed Schubert's vehicle because he was a police officer. Because of the prejudice resulting

from the prosecutor's comments, defendant seeks reversal of his conviction and a new trial.

A reviewing court should not reverse a conviction on the grounds of prosecutorial error "unless the conduct was so egregious as to deprive defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 437-38 (2007) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)). To warrant a new trial, the prosecutor's misconduct must be "clearly and unmistakably improper" and "substantially prejudice[] defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Id. at 438 (citing State v. Smith, 167 N.J. 158, 181-82 (2001)). "Factors to consider when analyzing prosecutorial conduct include whether defense counsel made a timely and proper objection, whether the remark was withdrawn promptly, and whether the court gave a limiting instruction." State v. Chew, 150 N.J. 30, 84 (1997).

Here, defendant's counsel did not object to the prosecutor's remarks when they were made. "[W]hen counsel does not make a timely objection at trial, it is a sign 'that defense counsel did not believe the remarks were prejudicial' when they were made." State v. Pressley, 232 N.J. 587, 594 (2018) (quoting Echols, 199 N.J. at 360). A "[d]efendant's lack of objections . . . weighs against [the] defendant's claim that errors were 'clear' or 'obvious.' Indeed, '[i]t [is] fair to infer from the failure to object below that in the context

36                                                                        A-3472-17T2

of the trial the error was actually of no moment.'"  Nelson, 173 N.J. at 471 (second and third alterations in original) (quoting Macon, 57 N.J. at 333).

Prosecutors have "considerable leeway in summing up the State's case." State v. W.L., 292 N.J. Super. 100, 110 (App. Div. 1996) (citing State v. Williams, 113 N.J. 393, 447 (1984)).  Prosecutors' comments "must be confined to the evidence and the reasonable inferences to be drawn from the evidence."  Id. at 111 (citations omitted).  Remarks "plainly designed to impassion the jury" are often grounds for reversal.  Ibid. (quoting State v. Gregg, 278 N.J. Super. 182, 191 (App. Div. 1994)).

Generally, it is inappropriate for a prosecutor to comment on the credibility of the police officers who testify at trial.  See State v. Frost, 158 N.J. 76, 85-86 (1999); State v. Hawk, 327 N.J. Super. 276, 284-85 (App. Div. 2000).  However, a prosecutor's otherwise prejudicial arguments may be harmless if made in response to defense counsel's arguments.  See State v. DiPaglia, 64 N.J. 288, 297 (1974); State v. Munoz, 340 N.J. Super. 204, 216 (App. Div. 2001).

The remarks defendant now objects to on appeal made by the prosecutor were in response to arguments asserted in defense counsel's closing or were based on the evidence in the record.  During defense counsel's summation, he posited that police witnesses have an "interest in the outcome of the case" and

"Schubert, you heard, takes off a month. Do you think he filed any kind of workman['s] compensation claim here? Do you think what he has to say in a case like this will affect that?" The State objected because there was no testimony regarding a workers' compensation claim during the trial. The trial court agreed, but to avoid giving an instruction on the issue, the court allowed the prosecutor to respond to the allegation in summation. The prosecutor stated, "why does [Schubert] have any reason to make that up?"

In that context, the State's response was clearly proper. The prosecutor was not "vouching" for the officer's testimony, but properly responding to a direct attack on his credibility that was not permitted by the evidence. See State v. Patterson, 435 N.J. Super. 498, 510-11 (App. Div. 2014) (citations omitted) ("A prosecutor is permitted to respond to an argument raised by the defense so long as it does not constitute a foray beyond the evidence adduced at trial."); State v. McGuire, 419 N.J. Super. 88, 145 (App. Div. 2011) (citations omitted) ("A prosecutor's otherwise prejudicial arguments may be deemed harmless if made in response to defense arguments."). The comment was neither unfair nor improper and was not so egregious as to deprive defendant of a fair trial.

With regard to the State's recitation of its theory of the case that defendant intentionally rammed Schubert's vehicle, during closing argument,

prosecutors "are expected to make vigorous and forceful closing arguments to juries." Frost, 158 N.J. at 82. While some remarks by the prosecutor during summation may have been improper, they did not "substantially prejudice[] defendant's fundamental right to have a jury fairly evaluate the merits of his defense." Wakefield, 190 N.J. at 438 (quoting Papasavvas, 163 N.J. at 625).

After a careful review of the record, it is clear the prosecutor's statements were either fair comments or harmless, and there is no indication that the jury was led to a result it would not have otherwise reached. We therefore reject defendant's contention that the prosecutor's conduct deprived him of a fair trial.

VI.

Defendant also contends the trial court incorrectly ordered the amount of restitution owed by defendant at sentencing without conducting a further hearing, contrary to controlling statutes and case law. Defendant concedes that the statute governing motor vehicle theft, N.J.S.A. 2C:43-2.1, imposes mandatory restitution and does not require consideration of a defendant's ability to pay; however, he contends he is not obligated to pay the full amount of restitution claimed by the State without a hearing. The State agrees that defendant is entitled to an ability to pay hearing related to the costs incurred

by Schubert and perhaps his employer, and we therefore reverse and vacate the award of restitution and remand for an ability to pay hearing.

VII.

Defendant also contends the court failed to apply appropriate sentencing guidelines, denying him due process. We review the trial court's sentencing decision under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we consider whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record'; and (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in the original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Defendant challenges the legality of his sentence, arguing that the court failed to properly apply the sentencing guidelines. First, defendant contends that it was erroneous for the court to find no mitigating factors and sentence defendant based only on aggravating factors. Specifically, defendant argues the court erred by: (1) deeming each offense charged in this case as separate indictable convictions and not a single criminal episode; (2) treating his plan to steal a vehicle as one that involved contemplation of causing serious harm under N.J.S.A. 2C:44-1(b)(2); (3) failing to find Schubert's actions induced or

40

facilitated the commission of the crime under N.J.S.A. 2C:44-1(b)(5); (4) inflating his criminal history under N.J.S.A. 2C:44-1(b)(7); (5) refusing to find that defendant's conduct, given his character, minimal criminal history, work history, and support, was unlikely to recur under N.J.S.A. 2C:44-1(b)(8); (6) and finding defendant will likely commit another offense under N.J.S.A. 2C:44-1(a)(3).

Our review of a sentencing determination is "deferential." State v. Fuentes, 217 N.J. 57, 70 (2014). A reviewing court must affirm the sentence unless: (1) the guidelines were violated; (2) the court's findings of aggravating and mitigating factors were not based upon competent and credible evidence in the record; or (3) the application of the guidelines to the facts makes the sentence clearly unreasonable so as to shock the judicial conscience. Ibid. Here, the court properly considered the aggravating and mitigating factors and placed its reasoning on the record. The court's decisions as to each of defendant's challenges were supported by competent and credible evidence in the record, and the resulting sentence was appropriate.

The sentencing court provided a statement of reasons supporting its sentencing decision, the sentence is based on competent credible evidence in the record, and the sentence does not shock the judicial conscience. The court applied the aggravating factors, found no mitigating factors, and followed the

appropriate sentencing guidelines. State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting Roth, 95 N.J. at 364-65).

Lastly, defendant contends cumulative error warrants a reversal of his convictions and sentence. Aside from the necessity to hold a restitution hearing on the non-theft-related amount owed, defendant has failed to assert any errors, let alone multiple errors, requiring a reversal for their cumulative impact.

We have considered defendant's other arguments in his pro se supplemental brief and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, reversed in part, and remanded for an ability to pay hearing on the question of restitution as explained herein. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3472-17T2